AVINGER v. SOUTH CAROLINA RAILWAY COMPANY.

1.  In action against a railroad company to recover damages for refusing to carry goods for plaintiff, there being some evidence that defendant refused to ship for plaintiff while shipping for others, a non-suit was properly refused.

2.  A common carrier is bound to carry for all and at a reasonable charge, making no discrimination as to the right to ship; but he is not required to charge all persons alike.

3.  A railroad company organized for the purpose of carrying goods and passengers would be a common carrier; but when it builds a branch road, it is a question for the jury whether such branch is operated for public transportation or only for the company's purposes in maintaining its main road. The fact that the company *used* the branch is not conclusive that it was used by the company in its character of a common carrier. This depends not simply upon the use, but upon the character of that use.

4.  Requests to charge which involved an opinion on disputed facts, were properly refused.

5.  In this case the trial judge correctly charged the law applicable to punitive damages as follows: "Wherever an act is done by a defendant and he is sued for it and the jury think that he has been trying honestly to carry out his rights without interfering with the rights of others, maliciously, wilfully, or otherwise, then the jury should confine themselves to actual damages. But wherever there has been any ill-will or wilful disregard of the rights of another, then the jury is at liberty, in a case like this, to give exemplary damages."
    Only the result concurred in.[1]

Before FRASER, J., Berkeley, June, 1887.

This was an action by Thomas J. Avinger against the South Carolina Railway Company, commenced in September, 1885. The complaint was as follows:

The plaintiff above named, complaining of the defendant above named, alleges:

*First.* That at the times hereinafter mentioned, the defendant was and now is a railroad corporation, created by and under the laws of the State of South Carolina.

*Second.* That at the times hereafter mentioned the defendant,

---

[1] See note *ante* page 202.

as such railroad corporation, were common carriers for hire under the laws of the State of South Carolina between the city of Charleston, County of Charleston, State aforesaid, and Lamb's Station, in the County of Berkeley, State aforesaid, and as such common carriers for hire operated the railroad between said points.

*Third.* That from the twenty-second day of December, 1884, to the first day of June, 1885, the defendants unlawfully and wrongfully refused, and continued to refuse, to receive, carry, and deliver the property of plaintiff for hire between the said city of Charleston and Lamb's Station aforesaid, although the said defendant was then and during said period receiving, carrying, and delivering for hire as such common carriers, the property of other persons between the said city of Charleston and the said Lamb's Station.

*Fourth.* That the defendant wrongfully and unlawfully, between the twenty-second day of December, 1884, and the first day of June, 1885, discriminated against the plaintiff in their business and vocation of common carriers aforesaid, in their operation of the railroad between the city of Charleston and Lamb's Station, aforesaid, and therein wrongfully and unlawfully refused, and continued to refuse, to furnish to this plaintiff without discrimination the same facilities for the carrying, receiving, delivery, storage, and handling of the property of the plaintiff as by them the defendant furnished for all other property of like character carried by the defendant between the said city of Charleston and said Lamb's Station.

*Fifth.* That by reason of the premises the plaintiff has been injured to his damage two thousand dollars.

Wherefore the plaintiff demands judgment against the defendant for the sum of two thousand dollars damages and costs of this action.

Defendant's answer was as follows :

The defendant above named, answering the complaint herein, by Brawley & Barnwell, its attorneys, admits the first allegation thereof, and denies each and every other allegation in said complaint contained.

2. For further defence, the defendant says the railroad track

from Ten-Mile Hill, on its main line, to a point known as Lamb's, on the lands of the Charleston S. C. Mining and Manufacturing Company, was constructed at the special request of the last named company, and exclusively for its benefit, to enable said company, which was engaged in the mining of phosphate rock, to ship the same by rail, the said company furnishing the right of way over its land without charge, and contributing to the expense of building said track; that when the same was constructed it was not expected that said track should be used by the defendant in its capacity of common carrier, and no provision was made for depot facilities at said terminus at Lamb's, and no conveyance of right of way was executed.

That some time after said track was constructed, it was found that by extending the same to the Ashley River, through the lands of the said mining company, a general business in the transportation of freight and passengers could be built up, and the same was done with the consent of said mining company, and the defendant received and carried all freight that was offered, and, among others, freight for the plaintiff, Avinger, up to about the 15th day of January last; about that time it received notice from the mining company forbidding it to land freight upon its lands, the said company alleging that it was injurious to its mining interest to permit strangers to make a thoroughfare of its lands lying about the station at Lamb's; that thereupon negotiations were had between the defendant company and the mining company, wherein the defendant company endeavored to assert and procure the right to use said track for all purposes necessary in its business as a common carrier, which negotiations were carried on for some time, pending which this company gave public notice that it would no longer receive and carry any freight to Lamb's; the result of such negotiations was the refusal of said mining company to grant a conveyance of a right of way for such purposes, and this defendant was advised by counsel that it had not acquired in the premises such right as would enable it, without consent of such mining company, to land freight at Lamb's for other parties than said mining company; and although this defendant believed, and still believes, that it is legal and within its rights to transport freight for the said mining company exclu-

sively over the said track, yet, in view of the litigation threatened by said plaintiff, and the expense and annoyance incident thereto, it has been led to forego the exercise of such right, and the benefit to be derived therefrom, and since about the first day of June last it has refused to transport any freight whatsoever from Charleston to Lamb's, including in such refusal the freight of the said mining company. Wherefore the defendant demands that said complaint be dismissed and its costs.

It is not material to state the testimony further than to say that plaintiff's testimony was to the effect that he had been refused shipment to Lamb's, while others were permitted to make shipments that were taken there; and he also showed the extent to which he had been thereby damaged. The defendant's testimony was in support of the allegations of its answer.

The charge of the judge was as follows :

After hearing the testimony and argument in this case, and what I had to say to the counsel in the case, upon the motion for non-suit, it is not necessary that I should say very much to you. If it were not for these requests to charge, I would give you very briefly my view of the whole case, and let you take the record. But I must dispose of these requests to charge. The first thing that a jury has to do is to determine what the issue presented to them is.

The charge here is not that the defendant refused to carry goods here for the plaintiff, but that it refused to carry goods for the plaintiff when it carried goods for others. That the defendant refused to carry goods on the same terms for the plaintiff that it carried goods for others. That it discriminated against him ; that that was in violation of law, and for that he is entitled to recover damages. I have no right to tell you that a single fact has been proved in this case. I cannot tell you which of the witnesses to believe, or what facts they have proved. All the facts are for you under the instructions.

I will now pass upon these requests. The first proposition on behalf of the plaintiff is : 1st. "The jury are instructed that a common carrier, or a public carrier, that is, a railroad company, is bound to carry for all persons all goods offered for transportation by any person whomsoever, for a suitable hire, and that this

is the result of the public employment of the railroad company as a carrier, and for failure to receive, carry, and deliver goods so offered, they are liable to an action for damages. That as against a common or public carrier, every person has the same right, and that in all cases where his common duty controls, the defendant company cannot accommodate the mining company and refuse the plaintiff." By substituting "one person" in place of "the mining company," I charge you that that is a correct proposition of law.

2nd. "The jury are further instructed that if they find that the South Carolina Railway Company refused to carry the plaintiff's goods over their road, or any part or branch thereof, while they were carrying the goods of any other person or persons, or corporation, and discriminated against the plaintiff, then the plaintiff for such discrimination is entitled to recover the damages thereby sustained by the plaintiff." That, I think, is good law.

3rd. "And the jury are further instructed that the road of the South Carolina Railway Company includes all the road in use by said company, whether owned or operated under a contract or lease by the South Carolina Railway Company, and if the jury find, from the evidence, that the road from Charleston to Lamb's Station was during the times of discrimination complained of, in use by the South Carolina Railway Company, then they are thereon responsible for discrimination and damages therefrom as for any other part of their road." I think that is correct.

4th. "And the jury are further instructed that if they find, from the evidence, that the defendant, the South Carolina Railroad Company, operated, by steam, the railroad between Charleston and Lamb's, and that the defendant company was doing business as a public or common carrier on such road, then the defendant would be liable for all acts of discrimination against the plaintiff." I think that is correct.

5th. "And the jury are further instructed that in this case it makes no difference by whom this railroad was laid out and constructed; and if the jury find that the defendant company was maintaining and operating said road, then the defendant company would be liable to the plaintiff for any damages proven, from all acts of discrimination against the plaintiff, and refusing

to carry the goods of the plaintiff on the same terms when it carried the goods of another." I will add to this: "If it did so carry the goods of another," I think the proposition is correct.

[Propositions 6, 7, and 8 were withdrawn.]

9th. "The jury are instructed that if they find the discriminations and damages to plaintiff, as alleged, the time admitted by defendant in its answer, during which they carried goods for persons other than the plaintiff to Lamb's Station, was from 15th January, 1885, to 1st June, 1885, and the damages of the plaintiff within that time would be the amount plaintiff would be entitled to recover in such case." I don't know that I can charge you that, for the reason that I think it requires me to charge you upon a question of fact. It is true that the answer admits that certain things were done between January and June, and you may find the discrimination, but I don't think I have the right to charge you on that fact.

I am requested by counsel for defendant to charge you as follows: 1st. "That if the jury find, from the evidence, that the railroad company carried freight from Charleston to Lamb's from the time it refused to carry from Avinger, until 1st June, 1885, for the mining company alone, and that the freight for the mining company was delivered on a private platform of the mining company, then the railroad had a right to refuse to carry Avinger's freight there, and he cannot recover."

I cannot charge you that proposition. I think the law is this: When the defendant constructs a branch of its road and operates it with its own engines, cars, and employees, even though it may be such a branch as it had no right to construct without the consent of the owners of the land through which it passes, such branch road is operated under all the liabilities to the public which attach to the main lines. If the company carries passengers at all, it must carry all alike. If it carries freight for one, it must carry freight for all on the same terms. If the company has any legal existence at all as to such branch, it must have all the liabilities of a common and public carrier. Such a liability is as much a part of its existence as the power to make contracts or to do any other acts. Any other construction of the law would put the whole commerce of the country under the absolute control of

the railroads.   In the view I take of this case, therefore, it is not material whether the defendant had a right to condemn the right of way and of sites for depots or not.   As to the public, the company is estopped from saying that it has exceeded its charter powers.   I cannot, therefore, charge you that that first proposition is good law.

2nd. "That the action is at ·common law, and no penalties under any statute can be recovered." That is correct.   They are confined to actual damages, unless this is a case for exemplary damages.

3rd. "That punitive or vindictive damages cannot be recovered under the evidence in this case ; but the damages must be the direct result of the refusal to carry, or discriminations proved." The rule is this : Wherever an act is done by a defendant and he is sued for it, and the jury think that he has been trying honestly to carry ·out his rights without interfering with the rights of others, maliciously, wilfully, or otherwise, then the jury should confine themselves to actual damages.   But whenever there has been any ill-will or wilful disregard of the rights of another, then the jury is at liberty, in a case like this, to give exemplary damages.   In any event, the damages must be within the amount claimed, viz., $2,000.

Verdict was for plaintiff, and defendant appealed and asked for a non-suit or a new trial on the following grounds :

First.   For a non-suit: Because plaintiff offered no evidence showing that defendant had held itself out as a common carrier of freight between Charleston and Lamb's during the period in which it refused to carry the goods of plaintiff; and his honor erred in refusing the non-suit, and in deciding that if the railroad were there at all, it was there under the organic law of its being, and was estopped from saying it had exceeded its charter powers, and that without holding itself out as a common carrier at all, it was a common carrier to Lamb's.

Second.   For a new trial : Because it is respectfully submitted that his honor erred in charging as follows :

I.   That a common carrier, or a public carrier, that is, a railroad company, is bound to carry for all persons all goods offered for transportation by any person whatever for a suitable hire, and

that this is the result of the public employment of the railroad company as a carrier; and for failure to receive, carry, and deliver goods so offered, they are liable to an action of damages.

II. That the road of the South Carolina Railway Company includes the road in use by said company, whether owned or operated under a contract or lease by the South Carolina Railway Company; and if the jury find from the evidence that the road from Charleston to Lamb's Station was during the times of discrimination complained of, in use by the South Carolina Railway Company, then they are thereon responsible for discrimination and damages therefor as for any other part of their road.

III. That it made no difference by whom the railroad was laid out and constructed, and if the jury find that the defendant company was maintaining and operating said road, that the defendant company would be liable to the plaintiff for any damages proven from all acts of discrimination against the plaintiff, and refusing to carry the goods of the plaintiff on the same terms when it carried the goods of another, if it did so carry the goods of another.

IV. That when the defendant company constructs a branch of its road, and operates it with its own engines, cars, and employees, even though it may be such a branch, as it had no right to construct without the consent of the owners of the land through which it passes, such branch is operated under all the liabilities to the public which attend the main lines. If the company carries passengers at all, it must carry all alike. If it carries freight for one, it must carry freight for all on the same terms. If the company has any existence at all, as to such a branch, it must have the liabilities of a common carrier, such a liability is as much a part of its existence as the power to make contracts or to do any other act.

V. Because, it is respectfully submitted, that his honor erred in refusing to charge as requested by defendant, as follows: That if the jury find from the evidence that the railroad company carried freight from Charleston to Lamb's, from the time it refused to carry for Avinger, until 1st June, 1885, for the mining company alone, and that the freight for the mining company was delivered on a private platform of the mining company, then the

railroad had a right to refuse to carry Avinger's freight there, and he cannot recover.

VI. That he further erred in refusing to charge that punitive or vindictive damages cannot be recovered under the evidence in this case, but the damages must be the direct result of the refusal to carry or discrimination proved.

*Messrs. Brawley & Barnwell*, for appellant.

This action is at common law, for section 1440, General Statutes, as to discrimination in facilities, has been repealed by the act of 1882, 18 *Stat.*, 10. A common carrier must not make unreasonable discrimination between shippers, and when the circumstances and conditions are alike, he must carry for all. But this applies only between points between which it is in the custom of carrying goods, and where it has facilities for carrying. *Hutch. Carr.*, § 297 ; *Wood Rail. L.*, 563 ; 57 *Me.*, 188; 52 *N. H.*, 430; 14 *Rich.*, 181 ; 18 *S. C.*, 38; 19 *Id.*, 353. But every discrimination is not unjust. 18 *S. C.*, 38; 67 *Ill.*, 11. The acts prohibiting unjust discrimination are only declaratory of the common law. 110 *U. S.*, 667; *Wood Rail. L.*, 563. Therefore discriminations are not necessarily illegal. *L. R.*, 3 *App. Cas.*, 1029; 2 *Nev. & Mac.*, 115; *Wood Rail. L.*, 573; *Hutch. Carr.*, § 302. note; 1 *Nev. & Mac.*, 352, 56, 58; 110 *U. S.*, 667; 31 *Fed. Rep.*, 315. The defendant might carry to Lamb's for the mining company, over the latter's land, and yet not carry for plaintiff, just as it leaves freight on a landowner's platform without carrying for others to that point. The mining company permitted defendant to carry passengers to Lamb's, but forbid the carriage of freight. And under these circumstances, it was not "unreasonable" for defendant not to attempt the forcing of freight transportation. This was not a case for exemplary damages. *Thomp. Neg.*, 1264; 49 *Ill.*, 241; 42 *Pa.*, 493; 7 *Ind.*, 83; 29 *Conn.*, 499; 1 *Dill.*, 465; 3 *Metc.*, 149; 28 *S. C.*, 261; 3 *S. C.*, 580.

*Messrs. Bryan & Bryan*, contra.

*First.* On motion for non-suit. The Circuit Judge did not err in refusing non-suit and deciding as set forth in exceptions.

*S. C.*, 60; *Gen. Stat.*, §§ 1421, 1420; 24 *S. C.*, 60; Gen. Stat., §§ 1443, 1414, 1415, 8 *Stat.*, §§ 354, 384, 355–363; 11 *Stat.*, 295; 9 *Rich.*, 233; 2 *Rich.*, 434; 48 *Pa. St.*, 355; 5 *McLean*, 445; *Gen. Stat.*, § 1558.

*Second.* On exceptions to judge's charge. I. The Circuit Judge did not err in changing instruction set forth in exception I. 14 *Rich.*, 184; 18 *S. C.*, 38–42; 94 *U. S.*, 161; 110 *U. S.*, 667.

II. The Circuit Judge did not err in changing instruction set forth in exception II. Authorities *supra*, and *Gen. Stat.*, § 1443.

III. The Circuit Judge did not err in changing instruction set forth in exception III. Authorities *supra*, and *Gen. Stat.*, §§ 1443, 1414, 1415.

IV. and V. The Circuit Judge did not err in refusing to charge the defendant's request set forth in exception V., and assigning as reason therefor the proposition charged and contained in exception IV. 9 *Rich.*, *supra;* 11 *Rich.*, 92, 93; 15 *S. C.*, 483; *Gen. Stat.*, § 1558; 21 *S. C.*, 420.

VI. The Circuit Judge did not err in refusing to charge instruction as set forth in exception VI. 16 *S. C.*, 397–8; 3 *Id.*, 599; 21 *Id*, 599; 22 *Id.*, 1–4; 18 *Id.*, 115; 2 *Rich.*, 446; *Rice*, 224; *Dudley*, 92; 11 *Rich.*, 283–5; 11 *Id.*, 649–656; 14 *Id.*, 245; Gen. Stat., § 1539; 18 *Stat.*, 18; 31 *Fed. Rep.*, 689.

September 28, 1888. The opinion of the court was delivered by

Mr. Chief Justice Simpson. The character of this action and of the defence will be seen from the complaint and answer, copies of which are hereto appended.

At the close of plaintiff's testimony the defendant moved for a non-suit, which was refused, his honor saying that "it is by no means clear what are the rights of the railroad company over the land of the landowners over which this branch runs. It might be that under the statute, they had no right to condemn that land. The difficulty with me is, that if the railroad is there at all, is it not there under the organic law of its being? and if there, is it not forever estopped from saying that it has exceeded its charter powers? I am inclined to think that, without hold-

ing themselves out as common carriers at all, they were common carriers to Lamb's. Otherwise they had no right to be there. They ceased to be a corporation at Lamb's. I must therefore refuse the motion for non-suit."

The case then proceeded, when, at the conclusion of the testimony, several requests to charge, both from the plaintiff and defendant, having been made, his honor charged as follows : (See charge, with defendant's (appellant's) exceptions appended.)

Upon an examination of the testimony reported in the "Case," we have found that there was enough offered to carry the case to the jury, and therefore there was no error in overruling the motion for non-suit.

Nor was there error on the point raised in the first exception. While it is true that at common law and in the absence of charter or statutory regulations to the contrary, a common carrier may discriminate as to rates, so that no unreasonable charge is made, yet he must carry for all. Because it is a leading principle of the common law, applicable to all common carriers, that they are bound to carry for all, and for a reasonable remuneration. In *Johnson* v. *Pensacola & Perdido R. R. Co.* (16 Fla., 623), the following language was used, which succinctly embodies the common law doctrine on this subject, to wit: "That as against a common or public carrier, every person has the same right, that in all cases, when his common duty controls, he cannot refuse A and accommodate B ; that all, the entire public, have the right to the carriage for a reasonable price at a reasonable charge for the services performed. and the commonness of the duty to carry for all, does not involve a commonness or equality of compensation or charge; that all the shipper can ask of a common carrier is that for services performed he shall charge no more than a reasonable sum to him." This principle was recognized and enforced in our case of *Ex parte Benson & Co.*, 18 S. C., 42, 43. See also cases cited therein. The argument of appellant's counsel, on the above exception, seems to have been directed entirely to the point that there might be discrimination as to rates of transportation, as laid down above; but the charge of his honor, assailed in the first exception, did not conflict with this principle. The judge said nothing as to rates. His remarks

were confined to persons, and he ruled that a railroad was bound to carry for all, making no discrimination as to the right to ship. In this, as we have said, there was no error. *Chitty on Contracts* (11th ed.). 682, *et seq.* ; *Kent Com.*; *Ex parte Benson & Co., supra.*

The 2nd exception assigns error because his honor charged : "That the road of the South Carolina Railway Company includes the road in *use* by said company, whether owned or operated under a contract or lease by the South Carolina Railway Company, and if the jury find from the evidence that the road from Charleston to Lamb's Station was, during the times of discrimination complained of, in *use* by the South Carolina Railway Company, then they are thereon responsible for discrimination and damages therefor as for any other part of their road."

The main question below was, whether the defendant was a common carrier as to the branch to Lamb's. If it was, then the common law doctrine as to liability of common carriers, as announced above, applied to the case ; but the preliminary and vital question involved was, whether the defendant was a common carrier on said branch. This, it seems to us, was a question of fact, and consequently a question for the jury. What constitutes a common carrier, and how and when one can become such carrier, are questions of law as applied to the facts found, as also his responsibility. There can be no doubt that a railroad company organized and chartered for the transportation of goods, merchandise, and other property, is a common carrier, and would be so, independent of any declaration to that effect in its charter; such being the very purpose of its creation. But its character of common carrier can extend only to the road which it may be incorporated to construct or which it may operate by virtue of its charter. No doubt the defendant, under its charter, and the acts referred to by respondent's attorney, has been invested with power to construct branches to its main track ; and wherever this may be done for the purpose of transportation, it will become under said charter a common carrier as to such branches, subject to the law governing carriers. So, too, it has authority to operate other roads by contract or lease, for transportation purposes, and whenever it may do so, it becomes a common carrier upon

such roads.   But when a question arises whether or not it has become a common carrier as to such branch or road, this must depend upon the testimony, bearing upon the fact, whether the alleged road is operated for the purposes suggested, and not simply whether it has been used or is "in the use" of said company for any purpese.

Suppose, for instance, that the defendant owned a body of timber land some miles from its main track, and that for its own purposes in procuring cross-ties, stringers, and other lumber for repairs, it should construct a tract to said lands using its engines and cars thereon for the transportation of said lumber to the main track, and for no other purpose, could it be claimed that the company would become a common carrier thereon, and be bound to receive and transport all freight that might be offered?   We think not.   The question in such cases must turn on the object and purpose of the branch constructed and the road operated, and this is a question of fact, dependent not simply, as we have said, upon the *use*, but upon the character of the *use*.   We think, therefore, that his honor was in error when he charged the jury, "that if they found from the evidence that the road from Charleston to Lamb's Station was, during the times of discrimination complained of, in *use* by the South Carolina Railway Company, then they are thereon responsible for discrimination and damages therefor, as for any other part of their road."

So, too, we think his honor enlarged the test of becoming a carrier too much in the propositions excepted to in the third and fourth exceptions, in which he ruled that if defendant maintained and operated said road, or run its own engine and cars upon it, whether under its charter it had the right to construct it or not, it would become a common carrier thereon, "with all the liabilities to the public which attend the main lines."   True, these general propositions were accompanied with the statement, that if goods were carried for one, they must be carried for all, and if passengers were carried at all, all alike must be carried; which latter statements were correct, provided the position of carrier had once been established; but the propositions of law likely to mislead the jury preceded these statements, where his honor charged that maintaining and operating the road, running its

engine and cars upon it, made the defendant a common carrier thereon, without regard to the purpose and object of thus maintaining and operating it. Upon the facts of this case the jury may have been warranted in finding the defendant a common carrier to Lamb's Station. Of this, however, we intimate no opinion; we only decide that his honor's charge was erroneous, in enlarging too far the facts to be considered by the jury as determining the question whether the defendant had become a common carrier to said station, or rather in holding as matter of law, that the facts mentioned, if found by the jury, would establish the position of a common carrier in the defendant.

There was no error in refusing defendant's requests, as found in exceptions five and six. Both of these requests involved the holding, on the part of the judge, the fact that the position of a common carrier had not been established against the defendant, which, as we understand the case, was a question entirely for the jury, dependent upon the force and effect of the testimony. And we may add, that as to the sixth exception in regard to punitive or vindictive damages, the rule laid down by his honor was unobjectionable.

It is the judgment of this court, that the judgment of the Circuit Court be reversed.

MR. JUSTICE McIVER and MR. JUSTICE McGOWAN concurred in the result.