13257

STATE v. HOWELL *ET AL.*

(160 S. E., 742)

*Messrs. R. D. Epps* and *M. M. Weinberg,* for appellant,

*Messrs. F. A. McLeod, Solicitor,* and *R. M. Jefferies,* for respondent,

October 13, 1931.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The appellant and his wife, Carrie S. Howell, were tried at the July, 1930, term of the Court of General Sessions for Sumter County on an indictment which charged them with the murder of E. Hart Williams. The woman was acquitted, the man was convicted and sentenced to electrocution. He appeals on numerous grounds of alleged error. But, as in our judgment, the case must go back for another trial on a cardinal question, it becomes immaterial to discuss any others.

Indeed, it would be fairer to all parties that we should not discuss them.

Underlying this tragedy is the network of a story of jealousy, of infidelity, of false statements of deceit, which led to the death of an innocent man. It would need the genius of a Poe or a De Maupassant to fathom the motives of the woman, who by her own confession led her husband to slay an innocent young man under the influence of the passionate jealousy and anger aroused by the false charge that the unfortunate victim, whom she had marked for destruction, had on several occasions forced his way into her room at night and criminally assaulted her. Her utterly impossible story was that she did not know the man; that her husband threatened to kill her if she did not point out the man to him; that under the compulsion of his threats she pointed him to Williams and he slew him. She never appealed to the officers of the law, or to any one, indeed, for protection against her husband's threats. Yet this woman was acquitted and the man was convicted and sentenced to death.

Neither of them had employed counsel when they came to trial; therefore the presiding Judge appointed able counsel to represent each of them.

On the trial the woman proved to be hostile to her husband, and by her testimony sought to, and succeeded, in casting the whole burden of the sordid tragedy upon him.

It is difficult to understand the psychology of the jury which could find the woman innocent and the man guilty.

The error which makes it necessary to reverse the judgment and sentence of death is set out in Exception 12, which challenges the definition of malice given by the presiding Judge in these words: "Malice is a term of art, gentlemen, used in the law books. It is any form or design of doing mischief which arises from hatred or revenge. But the legal definition is: 'Malice is the wilful intentional doing of a wrongful act, knowing it to be wrong.'

Wilful, intentional and when a person does an act knowing it to be wrong, he intends to do it, it is malicious."

This is not the definition of malice long accepted in this State and which was laid down by that eminent jurist, Judge David Lewis Wardlaw, in the case of the *State v. Doig,* 2 Rich., 179. He used these words:

"In law, malice is a term of art, importing wickedness and excluding a just cause or excuse. It is implied from an unlawful act wilfully done, until the contrary be proved."

Put into parallel columns, this definition and that given in the present case do not jibe. It is patent that the very heart of the definition of malice is eliminated from the definition in this case. The very essence of malice is that the wrongful act must have been done intentionally *and without just cause or excuse.* The appellant in this case was deprived of the benefit of this wholesome and safeguarding principle of the law. The jury were limited to deciding whether he did a wrongful act, intentionally, knowing it to be wrong. There was no dispute that he had killed a man, which is a wrongful act; there was no dispute that he did it intentionally. The jury were never permitted to say whether there were just causes or excuses. Therefore the jury were bound by the definition of malice given them to find him guilty of murder. They were not allowed to consider whether he had an excuse that might justify them in finding him not guilty under a plea of self-defense, or which would reduce his offense from murder to manslaughter, or which would suffice to induce a recommendation to mercy. It is true that the defendant had planted his defense upon the plea of self-defense. He testified that he shot only when the deceased made a motion to draw a weapon; his hostile wife feebly corroborates this, and his daughter Gladys plainly substantiates it. If correctly advised as to the definition of malice, the jury might have concluded that, although the woman now repudiated her story that she had been ravished, nevertheless, she had not done so at the time of the killing, and so, when she pointed to the unfortunate

young Williams and said to her jealous husband, "this is the man who has so foully dealt with me," he was so transported by the passion which swept over him at the sight of the ravisher of his wife that he was irresponsible, and so entitled to some consideration in mitigation of his offense. The concluding sentence taken from the definition in the *Doig case* is: "It (malice) is implied from an unlawful act wilfully done, until the contrary be proved." It was the province of the jury under proper instruction to determine whether this implication of malice had been removed by the evidence, but they were given no opportunity to consider it. They were limited to the determination of the question whether the appellant did a wrongful act, intentionally, knowing it to be wrong.

It is argued that appellant may not complain of the charge because he stood upon the plea of self-defense, and the law of self-defense and that of manslaughter were correctly charged. We do not deem this argument sound. The error was of the most vital consequence, and we are unable to say what effect it had upon the minds of the jurors. The appellant had the right, as has any person on trial in our Courts, to have the law bearing on the crime with which he is charged correctly stated to the jury.

It is argued for respondent that the definition of malice given by the Judge is sustained by the case of *State v. Crosby*, 88 S. C., 98, 70 S. E., 440, 443. It is true that the definition of malice in that case by the Circuit Judge, as it is quoted, is along the line of that given in our case, and it is true that the verdict in that case was affirmed, but it is not correct to say that the Supreme Court affirmed the definition of malice there quoted. Mr. Justice Gary said, delivering the opinion of the Court: "When the charge is considered *as a whole,* it will be seen that this exception cannot be sustained." The charge is not reported, but the inference is a natural one that somewhere in the charge a correct definition of malice was given. The exception states only the

"alternative" definition given by the Judge. In his dissenting opinion in that case Mr. Justice Hydrick said: "It seems clear to me that the definitions of malice given in the charge, which is correctly quoted in the sixth and seventh exceptions, were erroneous and misleading in the particulars pointed out in these exceptions. In *State v. Rochester*, 72 S. C., 194, 51 S. E., 685, this Court held that a definition of malice similar to that contained in the sixth exception was erroneous, and reversed the judgment, *notwithstanding the trial Judge afterwards correctly charged the law of manslaughter*, because, said this Court, 'the charge as to murder was just as explicit. The jury had no greater right to disregard the charge as to murder than that relative to manslaughter, and it is impossible to tell which may have influenced them in rendering their verdict.' "

The importance of a correct statement of law is emphasized in the case of *State v. Ferguson*, 91 S. C., 235, 74 S. E., 502, 504. In that case the Circuit Judge said: "If one man kills another out of a malicious heart, it is murder. And a malicious heart, Mr. Foreman and gentlemen, is a heart that is full of sin; that is wrong with God and man. Malice—the lawbook's picture is black. Artists have tried to draw it * * * and they picture the malicious heart in black, and they picture a lawful heart in white."

On appeal the Supreme Court said: "His Honor was likewise unfortunate in departing from the approved and well-understood legal definitions of malice. It is well for the trial Judge to point out to the jury the difference between the popular and the legal meaning of the word. But a man's heart may be full of sin. It may be wrong with God and man. It may be what some artists would depict as black. Yet, unless it prompts 'the wilful or intentional doing of a wrongful act, *without just cause or excuse,' it is not a legally malicious heart,*" (Italics added.)

In the case of *Kibler v. Southern Ry.*, 62 S. C., 252, 40 S. E., 556, 563, a civil case, the correct definition of malice

was brought in question. The language excepted to was this; in defining malice, the Judge said:

" 'Any malice does not necessarily import ill will, or prejudice, or anything of that kind. The intentional doing of any unlawful act would be construed malicious,'—the special error complained of being in the words which we have italicized. This, we think, states the rule in stronger terms than are justified either by principle or authority. One may intentionally do an act which proves to be unlawful without the slightest design to do a wrong to any one. * * * The rule is more correctly stated in *State v. Doig,* 2 Rich., 182, by Judge Wardlaw, as follows:

" 'In law, 'malice' is a term of art, importing wickedness, and excluding a just cause or excuse. It is implied from an unlawful act wilfully done until contrary be proved.' "

Judge McIver, who delivered the opinion of the Court in the *Kibler case,* quoted and approved the opinions in the cases of *State v. Alexander,* 14 Rich., 253; *State v. Toney,* 15 S. C., 412-413; *Avinger v. Railroad,* 29 S. C., 265, 7 S. E., 493, 13 Am. St. Rep., 716. He quoted with approval the following: "This statement of the rule was recognized and followed in *State v. Alexander,* 14 Rich., at page 253, where Mr. Justice Inglis, in delivering the opinion of the Court, after stating the rule as above, adds these words: 'Clearly importing that said act may be wilful without being actually malicious.' "

It seems to us that it would be a dangerous menace to the safe and orderly administration of the criminal law in this State if this Court should directly, or by indirection, approve the definition of malice disputed and challenged here.

Accordingly, it is the conclusion of this Court that the judgment and sentence of the Court below should be reversed and a new trial had.

It is so ordered.

Mr. Chief Justice Blease and Mr. Justice Cothran concur.

Mr. Justice Stabler (dissenting) : The appellant, O. E.
S. Howell, and his wife, Carrie S. Howell, were tried to-
gether at the July, 1930, term of Court of General Sessions
for Sumter County, on an indictment charging them with the
murder of one E. Hart Williams. The wife was acquitted;
but Howell was found guilty of murder and sentenced to
death by electrocution. He now appeals to this Court.

When the case was called, appellant moved the Court that
he be granted a separate trial, on the ground that his wife's
defense was hostile to his. Also, at the close of all the testi-
mony, a motion for a mistrial as to the appellant was made,
on the ground that his rights had been jeopardized on ac-
count of conflict between the positions taken by the two de-
fendants. Both of these motions were refused, and the ap-
pellant assigns error.

It is undisputed that on June 18, 1930, Mrs. Howell went
to a filling station in the City of Sumter, where the deceased,
Williams, was working; that she called him out of his place
of business and was talking with him when her husband
come upon the scene and shot him to death with a pistol.
Howell immediately thereafter stated that his wife had
pointed out the deceased to him as a man who had ravished
her the week before, and that he shot him because it appeared
that the deceased was about to shoot him. His wife, at first,
also claimed that some man had violated her, and said that
she had told her husband about it; but she lated denied, in
an affidavit, that Williams or any other man had mistreated
her saying that her statement to her husband had been made
for the reason that he had threatened and abused her and
charged her with infidelity, and that she stood in fear that he
would take her life. The appellant thereupon made an affida-
vit, in which he declared that the latter statement of his wife
was true and correct.

The motion for severance was within the discretion of the
trial Judge. In the recent case of *State v. Francis*, 152 S.
C., 17, 149 S. E., 348, 351, 70 A. L. R., 1133, Mr. Justice

(now Chief Justice) Blease, speaking for the Court, said: "It has been repeatedly held by this Court that a motion for a severance and separate trial on the part of one or more defendants in a case, where several persons are jointly charged with a criminal offense, is addressed to the discretion of the trial Court. See *State v. Kenny,* 77 S. C., 236, 57 S. E., 859; *State v. Wade,* 95 S. C., 387, 79 S. E., 106; *State v. Brown,* 108 S. C., 490, 95 S. E., 61; *State v. Hannahan,* 111 S. C., 58, 96 S. E., 667; *State v. Jeffords,* 121 S. C., 443, 114 S. E., 415."

See, also, *State v. Wise,* 7 Rich., 412, which is a leading case on the subject.

In the case at bar, the trial Judge had before him the written statements, the confessions, etc., of the defendants as to the manner and cause of the killing, and under the facts thereby revealed there was no abuse of discretion on his part in refusing to give the appellant a separate trial.

When J. D. Anderson, a witness for Mrs. Howell, was on the stand, Mr. Schwartz, one of her counsel, asked him, with regard to when he knew about Howell's treatment of his wife, the following question, and also, in the same connection, made the following remarks:

"Q. Did you know his reputation for the way he treated his wife, whether he mistreated her or treated her kindly?"

"Mr. Schwartz: We take the position that the question is competent, inasmuch as there is offered in evidence the statement by the defendant, Carrier S. Howell, that she was forced, coerced, and under duress used by her husband to make this statement. We want to show that she has stood in fear for years—"

The Court also allowed Mrs. Howell, over the objection of appellant's attorneys, to testify as folows:

"Q. You were afraid he was going to kill you? A. Yes, sir, I was.

"Q. Did he treat you in such a way as to lead you to believe that he would kill you? A. Yes, sir.

"Q. You stood in fear of him? A. Yes, sir."

Appellant complains that the question asked the witness Anderson, the remarks of counsel for Mrs. Howell, and her testimony, admitted over his objection, were highly prejudicial to him. With regard to the question asked Anderson, the Court did not allow the witness to answer, and also instructed the jury to disregard what counsel said in that connection; and so no harm was done.

As to the testimony of Mrs. Howell, her defense was that she acted under the coercion of her husband; his treatment of her causing her to stand in fear for her life. While this testimony was offered in defense or mitigation of what the wife had done, the manner of the husband's treatment of her could not have affected his guilt or innocence on his trial for murder. Under appellant's own testimony, the question of whether he killed Williams because of any statement made to him by his wife was eliminated, in that he testified that he shot the deceased, not because of anything his wife had told him, but because he thought the deceased was about to shoot him. Therefore the circumstances under which her statement to him was made could not have affected his defense. But, even if he had claimed that what she told him was the moving cause of the killing, testimony that her statement to him was made under coercion by him would have been admissible to impeach his defense.

When Mrs. Goodman, a witness for appellant, was on the stand, he attempted to prove by her that he had told her, several days before the homicide, that his wife had complained to him about some man's having ravished her. Appellant complains of the rejection of this testimony. For several reasons this assignment of error cannot be sustained. The statement was plainly self-serving. It was so far removed from the time of the homicide as to be inadmissible as part of the *res gestæ;* and a question of this kind is largely a matter within the discretion of the trial Judge. *State v. Way,* 76 S. C., 91, 56 S. E., 653.

Complaint is also made that the Court committed error in permitting Mr. Jefferies, counsel assisting the solicitor in the prosecution of the case, to comment upon the absence of testimony that had been ruled out upon objection of the State. It appears that Mr. Jefferies, in his argument to the jury, stated that, if Howell's testimony was true, to the effect that his wife told him about some mistreatment of her by an unknown person, he should have repored it, which he had not done. Objection was made to this line of argument, but was overruled by the Court, who allowed counsel to proceed.

When appellant was on the stand, he was cross-examined at length with regard to his failure to report to the authorities what he claimed his wife had told him. He stated that he had not done so, for the reasons that he did not know whom to report it to, that he was investigating the matter for himself, and that he was indifferent about it, as he was not sure his wife was telling the truth.

In *State v. Robertson,* 26 S. C., 117, 1 S. E., 443, the Court said: "It is most certainly proper, especially in criminal cases, that counsel, in addressing the jury, should keep themselves strictly within the record. This rule is essential, and must be enforced; but from the very nature of the case some latitude in argument must necessarily be allowed. It is often matter of difficulty to draw the line sharply between legitimate argument and unauthorized statement—between what is and what is not allowable; and, as this pertains to the conduct of the cause, it must, to a large extent, be left to the wise discretion of the Circuit Judge. We could not affirm that the omission of the Circuit Judge to restrain the solicitor in his argument was such error of law upon his part as to authorize this Court to set aside the verdict on that ground."

The trial Judge in the present case, who was always fair and impartial, and for whose memory both bench and bar

cherish the tenderest feeling, had heard all the testimony brought out in the case, over a period of several days, and was at that time listening to the arguments of counsel. If he had thought Mr. Jefferies' argument was outside the facts as disclosed by the testimony, he would have forthwith required him to come within the record. He evidently thought, which was a reasonable view—and doubtless that of the jury—that counsel was referring to the testimony of appellant himself as to his failure to "report" to the authorities what his wife had told him. A matter of this kind necessarily, as held in the *Robertson case,* is largely within the discretion of the trial Judge, and an examination of the record has not convinced me that there was such error of law on his part, if any, in refusing to sustain appellant's objection, as to require a new trial for that reason.

When Howell was on the stand, counsel for his wife was permitted to ask him whether or not he had ever practiced medicine; and, over objection of his counsel, he was required to answer the question. He complains that this was error, in that it violated the rule with reference to asking the defendant about other offenses he may have committed, since appellant, not being a licensed physician, if he had practiced medicine, had violated the statutory law of the State. There are two reasons why this assignment of error cannot be sustained: First, the Court told the jury not to consider but to disregard the testimony; and, second, when Mrs. Howell was on the stand, she was allowed to testify, without objection, that her husband had practiced medicine.

In the beginning of his charge, Judge Wilson took occasion to compliment those connected with the trial of the case for the expeditious manner in which it had been concluded; and called attention, in that connection, to the fact that we often read of cases that take weeks or months for trial, referring to the *Beatty* and *McCue cases* as examples of that kind. Appellant contends that these remarks tended to create

in the minds of the jury the impression that the trial Judge regarded the case at bar as being parallel to the *Beatty* and *McCue murder cases,* and in this way prejudiced the rights of the appellant. This contention is without merit. From a reading of this part of the charge, it is clear that the jury did not get the impression suggested by the appellant. While the remarks were immaterial and irrelevant, they furnish no ground for a new trial. *State v. Corbin,* 16 S. C., 533.

The Court further observed, in the introduction of his charge, that, when defendants brought before the Court for trial upon the grave charge of murder are without counsel, it becomes the duty of the Court to appoint members of the bar, learned in the law, to represent them; and that in the case at bar he had done so by appointing two able attorneys to represent each of the defendants, and that they had promptly responded, with ability and zeal, without pay or hope of reward. Appellant complains that these remarks constituted error, as they tended "to create in the minds of the jury the impression that the trial Judge thought the conduct of the defendants to be so heinous that it was necessary to exculpate the attorneys for attempting their defenses." It does not appear, however, that the remarks objected to created any such impression on the minds of the jury. While they irrelevant and immaterial, it cannot be said that they were unfavorable to appellant. The case was a serious one, and the trial Judge evidently felt that the able conduct of the defense by counsel appointed deserved, under the circumstances, the compliment which he endeavored to pay them— though it might be thought that he selected the wrong time and place to pay it. In addition, the Court told the jury that what he was saying was without reference to the merits of the case.

In defining malice, the trial Judge charged the jury as follows: "What is malice? Malice is a term of art, gentlement, used in the law books. It is defined about this way. It

is any form of design of doing mischief, which arises from hatred or revenge. But the legal definition is, malice is the wilful, intentional doing of a wrongful act, knowing it to be wrong. Wilful, intentional, and when a person does an act, knowing it is wrong, he intends to do it, it is malicious."

The appellant complains that in this instruction the Court erred in the following particulars:

"(a) The same is a charge on the facts.

"(b) The same is an error of law, because when a person does an act knowing it is wrong, it is not necessarily malicious *per se,* but at most is only evidence from which the jury.may conclude the act to be malicious.

"(c) This confused the elements of the crime of murder with those of the crime of manslaughter, because in the case of manslaughter, a person kills another knowing it is wrong, and it is his intention to do it, but he acts under sudden heat and passion, but without malice. It is therefore for the jury to determine, under the circumstances of each case where a person kills another knowing it is wrong and intending to do it, whether the act is accompanied by malice or whether the same is committed in sudden heat and passion upon a lawful provocation."

The first ground of objection is without merit. See *State v. McIntosh,* 39 S. C., 97, 17 S. E., 446. The second (b) and third (c) assignments of error, however, have given us grave concern.

In *State v. McDaniel,* 68 S. C., 304, 47 S. E., 384, 386, 102 Am. St. Rep., 661, the Court charged the jury as follows: "In this case, if defendant intentionally, wrongfully, killed the deceased, without any justification or excuse, then he killed him with malice, and that would constitute murder." This charge was excepted to by the defendant, and upon appeal this Court said: "The Court here was instructing the jury with reference to murder, and malice as an essential ingredient. In the sentence just preceding the one

excepted to, the Court said: 'In its general signification, "malice" means the doing of a wrongful act intentionally, without justification or excuse.' This is substantially the famous definition of 'malice' by Bayley, J., in *Bromage v. Prosser,* 10 E. C. L., 321: ' "Malice," in common acceptation, means ill will against a person, but in its legal sense it means a wrongful act done intentionally, without just cause or excuse.' "

In *State v. Rochester,* 72 S. C., 194, 51 S. E., 685, 687, relied upon by appellant, the trial Court instructed the jury as follows: "The State charges the killing was murder; that is to say, that it was done with malice aforethought, either expressed or implied. Now, what does that mean? (A great deal has been said and written as explanatory of malice and to illustrate malice, and men may have different conceptions of what that legal term means. After all, what is malice? It is the intentional taking of human life.) And in the investigation of this question, therefore, you can see you must perform the some what delicate and difficult task of trying to interpret the intention which actuated the act."

The defendant complained that this was an incorrect definition of malice and calculated to mislead the jury to his prejudice.

This Court, after reviewing a number of decisions, said:

"These cases are cited with approval in *State v. Ariel,* 38 S. C., 221, 16 S. E., 779. It will thus be seen that the charge was inapplicable to the facts of the case under consideration; the witnesses having testified as to the facts and circumstances surrounding the homicide.

"It might be that the Court would regard the charge as merely illustrative of malice, and that the error was corrected in the subsequent charge as to the different degrees of homicide (under the cases of *State v. Murrell,* 33 S. C., 83, 11 S. E., 682, and *State v. McDaniel,* 68 S. C., 304, 47 S. E., 384, 102 Am. St. Rep., 661), but for the fact that

the principle was emphasized and made applicable to the facts in this case in the other portion of said charge. The first exception is sustained."

In the case at bar, the state contends that, under the facts and circumstances shown, there was no error as complained of, and that certainly, if there was error, it was harmless when the charge is considered as a whole; and *State v. Crosby*, 88 S. C., 98, 70 S. E., 440, 442, is relied upon to support the correctness of the definition of malice as given. In that case the Court charged the jury as folows: "Another definition [of malice] is that it is the willful and intentional doing of a wrongful act, and the person knowing his act to be wrong, knowing it to be against the law, and wilfully does it, the law says when a man does that he does it maliciously."

Crosby excepted to this charge, contending that it was error to thus define malice without stating that the wrongful act must be without justification or excuse; this being an essential part of the definition of malice in that connection. This Court, on appeal, in disposing of the exception, merely said: "When the charge is considered as a whole it will be seen that this exception cannot be sustained." As the whole charge was not printed in the report of the case, it does not apear just what instruction rendered harmless the error complained of.

It is to be observed that the definition of malice in the case at bar is practically the same as that in the *Crosby Case*. The legal definition is undoubtedly incorrect, in that it takes no cognizance of just cause or legal excuse for the killing; and, unless the error was harmless under the peculiar facts and circumstances of the case, this Court would be bound to reverse the judgment and order a new trial.

The evidence offered, aside from that of the defendant Howell and his witnesses, tended to show that the killing was deliberate and coldblooded, and the only reasonable

conclusion to be reached from the evidence of the defendant himself is that the killing either was murder or was done in self-defense. He testified that the week before the homicide occurred his wife told him that she had been ravished on three different occasions by a man who had broken into their home at night; that he was indifferent about the matter, and did not report it to the authorities, for the reason that he was not sure his wife was teling the truth, being unable to sec how any one could get into the house when the door was locked, unless let in by some one on the inside; that on Tuesday of the week folowing the aleged mistreatment of his wife they went out to look for one Dollard, who he thought might possibly be the man; that they did not find Dollard, but his wife told him there was a man working at a filling station whom she thought to be the one; that on Wednesday morning, while they were down town, he told his wife to go around to the filling station to see the man and ask him about it, telling her that he (the appellant) would go home and rest, but that he did not do so, going instead to the filling station; that when he arrived there his wife and Williams were talking—she had called the man out of his place of business—and that she told him Williams was the guilty man; that thereupon deceased called his wife a damn liar and reached back to his hip pocket; and that he then shot and killed him. He admitted that he did not know that the man he killed had ever wronged his wife, but relied on what she had said. When asked whether he would have shot Williams for simply calling his wife a damn liar, he replied: "No, sir; not unless he made some effort to kill me." He further said that, in looking for Dollard, his purpose was only to get an explanation of the matter, and that, if he had found Williams to be the man, he intended to treat him in the same way. He further testified that he would not have taken the life of the deceased if he had not put his hand on his hip pocket, and that the reason

he shot was that he thought the deceased was about to shoot him. Narrowed down to its final analysis, appellant's testimony does not show that he shot the deceased under sudden heat of passion, either for the reason that he may have thought he had ravished appellant's wife or because of anything deceased said at the time of the killing. Furthermore, no words, however, opprobrious, will constitute the legal provocation necessary to reduce a killing from murder to manslaughter. *State v. Bethune,* 86 S. C., 143, 67 S. E., 466; *State v. Jacobs,* 28 S. C., 29, 4 S. E., 799. Nor could appellant here have successfully maintained—even if he had so attempted—that he killed under sudden heat of passion engendered by what his wife had told him, as, under all the evidence in the case, there could be no other inference than that he had had ample "cooling time." It does not appear, therefore, that under appellant's own testimony, the extent of the provocation, even if there was any provocation, was sufficient in law to mitigate the offense and reduce it to manslaughter. The testimony is undisputed that the deceased was guiltless of any wrong against the wife of the appellant; but, even so, the jury might have acquitted the defendant on his plea of self-defense, if they had believed that he went to the filling station with no purpose in mind to kill the deceased, but merely to talk the matter over with him. He had a right to approach the deceased, in a peaceable manner, to ask him about the matter, but not for the purpose of taking the law into his own hands. *State v. Strickland,* 147 S. C., 514, 145 S. E., 404. There is no complaint as to the charge of the law of self-defense, of which defendant got the full benefit, but the jury under the evidence rejected his plea, evidently taking the view that his purpose in going to the filling station was to kill the deceased in order to avenge the supposed violation of his wife. So, although the legal definition of malice as given by the trial Judge was not correct, the error, under the peculiar facts and circumstances

of the case as revealed by the evidence, was harmless. It is also to be observed that, while the Court charged the law of manslaughter, it was unnecessary, as such law had no bearing on the issues as made by the evidence. See *State v. DuRant*, 87 S. C., 532, 70 S. E., 306.

In addition, the Court charged the jury, upon request of appellant's counsel, as follows:

"Where one in ignorance or honest mistake as to a fact, commits an act, which but for such mistake would be a crime, there is an absence of malice or criminal intent, which is generally an essential element of crime, and the general rule therefore is that such ignorance or mistake of fact will exempt one from criminal responsibility, provided there is no such fault or ignorance as will amount to criminal intent, provided, all reasonable diligence has been used to arrive at the truth.

"In other words, gentlemen, although a person is not excused on account of a mistake of law, this is not the rule where it comes to an honest mistake of fact. We can only act on appearances and where a person is even killed on account of an honest mistake of fact, the person who does the killing is not to be judged by what the facts subsequently turned out to be; but he is to be judged by the jury in accordance with the appearances as they existed to the defendant at the time of the killing. Provided, of course, that the defendant was honestly mistaken and used all reasonable diligence to ascertain the truth that would be used by a person of ordinary reason."

It would seem that this request was predicated upon the theory that, if appellant's wife told him the deceased was the man who had insulted her, and he honestly believed that she was telling the truth, and killed the deceased for that reason, although his wife had misled him, there would be no criminal intent or malice and such mistake of fact would exempt him from criminal responsibility, if he had

used reasonable diligence in arriving at the truth. Even if this charge should be considered as substantially correct statement of an abstract principle of law, such principle, under the facts of this case, was not applicable; and in charging it the Court gave to the appellant the benefit of a defense to which he was not entitled and which, he told the jury, would show an absence of malice.

I have read, and re-read the voluminous record of nearly four hundred typewritten pages, and have given to the questions involved in the appeal careful and painstaking consideration. While there was some error in the trial of the case, I do not think, as I have endeavored to point out, when the entire record is fully considered, that it was prejudicial.

I think the exceptions, therefore, should be overruled, and the judgment of the trial Court affirmed.

MR. JUSTICE CARTER concurs.