Sarah THOMAS, Appellant,

v.

**William D. LEEKE, Commissioner; The Attorney General of the State of South Carolina, Appellees.**

No. 83–6255.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 3, 1983.

Decided Jan. 12, 1984.

Rehearing and Rehearing En Banc Denied April 5, 1984.

---

Vance L. Cowden, University of South Carolina School of Law, Columbia, S.C., for appellant.

Donald J. Zelenka, Asst. Atty. Gen., Columbia, S.C. (T. Travis Medlock, Atty. Gen., Columbia, S.C., on brief), for appellees.

Before HALL and MURNAGHAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

MURNAGHAN, Circuit Judge:

Sarah Thomas, who was convicted of murder and sentenced to life imprisonment in a prosecution in the courts of South Carolina, appeals from the order of the United States District Court for the District of South Carolina, 547 F.Supp. 612, denying her a writ of *habeas corpus*. She asserts the constitutional invalidity of her conviction on the grounds that the jury was wrongly instructed regarding the burden of proving self-defense.

Because we think that, read in context, the charge to the jury regarding self-defense was constitutionally inadequate, we reverse the order of the district court and direct it to issue the writ unless Thomas is tried anew within such reasonable period as the district court may fix.

## I.

Thomas was convicted of murder for shooting Carnell Hunter on October 13, 1979 in Columbia, South Carolina. Up to a certain point, the facts are not in dispute. Thomas purchased, through a middleman, a quantity of heroin from the victim Hunter. Believing that the heroin was not of good quality, Thomas sought to reacquire the money she paid for it. Hunter returned some, but not all of the money, and a heated discussion between the two ensued.

Determined to recover the rest of her money, Thomas went into Dell's Lounge in Columbia, where Hunter was drinking with some friends. She had with her a pistol which she had borrowed from Sammy White, to whom she had stated that she was borrowing the pistol for a purpose other than to shoot Hunter. She approached Hunter, and demanded that he return the money. At gunpoint, Hunter smiled and gave her four dollars. Thomas began to retreat, heading away from Hunter and toward the door.

At this point, the various accounts diverge. According to witnesses for the state, Thomas turned and said "I ought to kill you," and shot Hunter four times. According to Thomas, she heard Hunter threaten to kill her as she retreated to the door. Thomas saw him reach toward a bulge at his side, which she believed to be a gun, and shot Hunter three times.[1] Thomas' version of the facts was corroborated by an eyewitness, Gloria White.

## II.

The trial judge presented the jury with the possible verdicts of guilty of murder, guilty of manslaughter, and not guilty. After instructing the jury that the state had the burden of proving guilt beyond every reasonable doubt, the court defined murder, manslaughter, and malice. The court charged the jury:

Murder is defined as the willful, felonious killing of a human being with malice

---

[1] We observe in passing the discrepancy in the two accounts regarding the number of shots fired. Neither the parties, nor the court below, explained or even acknowledged the conflict. Since the shots themselves are relevant only in that they were fired by Thomas and produced the death of Hunter, we need not dwell on a consideration immaterial to our disposition of the case.

aforethought, that malice being either expressed malice or implied malice.

The judge defined malice as follows:

Malice is a word suggesting wickedness, hatred, and a determination to do what one knows to be wrong without just cause or excuse or legal provocation.

The court also provided two, apparently interchangeable, definitions of manslaughter, the second of which was

the unlawful or felonious killing of a human being without malice in sudden heat and passion upon a sufficient legal provocation.

The judge then set out the defense of self-defense, and instructed the jury regarding the burden of proof with respect to self-defense.

Self-defense. Mr. Foreman and members of the jury, the law of South Carolina recognizes the right of every person to defend herself from death or serious bodily harm; and to do this, she may use such force as is necessary, even to the point of taking a human life. In other words, *self-defense is a complete defense* and entitles one charge[d] with an unlawful homicide to an acquittal or a verdict of not guilty if the legal elements of the plea of self-defense are shown to your satisfaction by the evidence. The right of self-defense rests upon necessity, either actual or reasonably apparent. In order to establish the plea of self-defense, [in] any homicide case, *the accused must show* four things. First, that she was not in fault in bringing about the immediate difficulty or the necessity for her taking the human life. Obviously, one cannot through her fault, bring on a difficulty, and then claim the defense of self-defense. Second, that at the time she fired the fatal shot, she believed in good faith that she was in imminent danger of losing her life or sustaining serious bodily harm. Imminent means immediate—not past or future, but present. Third, that such belief was reasonable and that a reasonably careful and prudent woman, a woman of ordinary firmness and courage situated in like circumstances would have

reached a similar conclusion. Four, where both the deceased and the defendant are on common ground, that is, where both have a right to be, then the defendant must show that she had no other reasonably safe, adequate, or obvious means of escape or way of [avoiding] the danger of losing her life or sustaining serious bodily harm except to act as she did.

   .     .     .     .     .

Where the defendant sets up, as here, the plea of self-defense and undertakes to present a case of apparent danger which is honestly believed in as a defense, the jury should in justice to the accused consider all the surrounding circumstances and facts calculated to influence motive. *Burden of proof in self-defense, I charge you* that *while* in South Carolina [*the State*] *is bound to prove every material allegation or claim* of the indictment *beyond every reasonable doubt* in order to obtain a conviction, *the accused,* if she seek[s] to excuse the killing by relying upon the plea of self-defense, *is required to establish such plea of self-defense by the preponderance or greater weight of the evidence,* and therefore held to a a [sic] lesser degree of proof than the State. *I told you explicitly that the burden of proof on the State is beyond every reasonable doubt. On the plea of self-defense, the defendant must establish that plea of self-defense by the preponderance or greater weight of the evidence.* The preponderance or greater weight of the evidence simply means *the greater amount of the truth on that issue.* It may be demonstrated by thinking of an ordinary or merchant scales. When you consider the plea of self-defense, it starts initially with the scales level and even. In order for the defendant to meet the required burden of proof of self-defense by the greater weight or preponderance of the evidence, she must tip those scales ever so slightly in her favor on that issue in order to meet the required burden; and if she tips those scales ever so slightly in her favor on the issue of self-de-

fense, she has met the required burden of proof. If however those scales remain even or if they tip ever so slightly in the State's favor, she has not met the required burden of proof. The accused is entitled to the benefit of every reasonable doubt arising upon the whole case after considering the testimony for and against any defense relied upon by the accused. It does not matter whether or not the preponderance of the evidence is in her favor if you entertain a reasonable doubt as to her guilt. For under those circumstances, it would be your sworn duty to acquit the defendant or to find the defendant "not guilty."

(Emphasis supplied)

At the conclusion of the charge, Thomas' trial attorney made a timely objection to the court's instruction on the burden of proof in self-defense. The jury, after it had begun its deliberations, returned to the courtroom and again was instructed on the definitions of murder, manslaughter, and malice. After further deliberation, the jury returned a verdict of guilty of murder, but accompanied its verdict with a recommendation of leniency.

### III.

*In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), stands for the proposition that the Due Process Clause requires a state to prove beyond a reasonable doubt "every fact necessary to constitute the crime" with which a defendant is charged. 397 U.S. at 364, 90 S.Ct. at 1072. In *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Supreme Court applied the rule of *Winship* in reaching its determination that, where a State makes heat-of-passion on the part of the accused a factor relevant to guilt, or degree of guilt, the due process clause requires the prosecution to bear the burden of proof on the heat-of-passion issue.

The Court, with respect to degree of guilt, retreated from *Mullaney* in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The *Patterson* court upheld the constitutionality of a New York law which cast upon the defendant the burden of proving, by a preponderance of the evidence, the affirmative defense of extreme emotional disturbance. That defense could reduce murder to manslaughter, not, however, lead to complete acquittal. The *Patterson* Court, did not profess to overturn *Mullaney,* rather it sought to distinguish it. Notwithstanding Justice Powell's compelling claim that the *Patterson* majority did so "on the basis of distinctions in language that are formalistic rather than substantive", 432 U.S. at 221, 97 S.Ct. at 2332 (Powell, J. dissenting), *Mullaney* must be viewed as alive, if not well.

In reaching its result, the *Patterson* Court declined to adopt as a constitutional imperative, operative country-wide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused.

432 U.S. at 210, 97 S.Ct. at 2327.[2] At the same time, the Court acknowledged the

---

**2.** The dissent apparently would view the language in *Patterson* dealing with the particular defense of extreme emotional disturbance as universally applicable to *every* defense, including that of self-defense. In our view, such an automatic extension of the holding in *Patterson* ignores the crucial fact that *Patterson* dealt explicitly with the defense of extreme emotional disturbance. Extreme emotional disturbance is a considerably expanded version of the common-law defense of heat of passion on sudden provocation, and its adoption by New York constituted a liberalization of the substance of the penal law from the viewpoint of the accused. *See Patterson,* 432 U.S. at 207, 97 S.Ct. at 2325; MODEL PENAL CODE, § 201.3(1)(b) comment 5 (Tentative Draft No. 9, 1959); Jef-fries & Stephens, *Defenses, Presumptions and Burden of Proof in the Criminal Law,* 88 Yale L.J. 1325, 1356 n. 93 (1979). In first introducing the concept, New York was entitled to condition it as it pleased. Whatever condition might be imposed, the law, substantively, from the accused's point of view, must have been improved by the introduction of an entirely new defense. Hence making the defense one for which the burden of proof was allocated to the defendant, and one which mitigated but did not completely eradicate guilt, occasioned no hardship or loss of benefit enjoyed before the law changed.

The situation is markedly different, however, where self-defense is concerned. Rooted in the

continued effectiveness of "previous cases holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." *Id.* What the Court failed to answer—or question—was how the Constitution requires us to deal with an affirmative defense which constitutes not merely confession and avoidance but rather a complete refutation of the existence of the crime in the first place. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) provided the court with the opportunity to answer the question with regard to self-defense. The *Engle* Court acknowledged that a colorable constitutional claim was presented by the argument that once a defendant raises the possibility of self-defense, "the State must disprove that defense as part of its task of establishing guilty *mens rea,* voluntariness, and unlawfulness." 456 U.S. at 122, 102 S.Ct. at 1568. The Court declined to answer the question, however, holding that consideration of the claim was barred by the principles articulated in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

## IV.

We need not reach the question of whether the due process clause prohibits in all instances the placing on the defendant of the burden of persuasion with regard to self-defense. It is enough, for the purposes of this case, to observe that the court's instructions regarding the burden of proof were both conflicting and confusing. "Because proof of self-defense constitutes an

absolute defense in that it renders the homicide justifiable, any error in the trial court's instruction concerning self-defense was necessarily prejudicial." *Wynn v. Mahoney,* 600 F.2d 448 (4th Cir.1979), *cert. denied,* 444 U.S. 950, 100 S.Ct. 423, 62 L.Ed.2d 320 (1979).

The trial court attempted to charge the jury both that the burden of persuasion of self-defense was on the defendant, and that the prosecution had the burden of proving "every material allegation or claim of the indictment beyond every reasonable doubt in order to obtain conviction." In so doing, it charged the jury that the state had the burden of proving that Thomas was guilty of murder, which the court had defined in part as a "willful, felonious killing . . . with malice aforethought." In its charge regarding manslaughter, the court used the terms "felonious" and "unlawful" interchangeably. The court later used the words "unlawful" or "unlawfully" three times in explaining malice to the jury. At the same time, the court instructed the jury that the accused must prove four elements of self-defense, and that "the accused, if she seek[s] to excuse the killing by relying upon the plea of self-defense, is required to establish such plea of self-defense by the preponderance or greater weight of the evidence. . . . If the scales remain even or if they tip ever so slightly in the State's favor, she has not met the required burden of proof."

The court therefore had in one breath instructed the jury that the accused had the burden of proving self-defense by a preponderance of the evidence, yet in the other that the prosecution had to prove beyond a

---

Anglo-American tradition is the belief that a killing in self-defense is not a crime. "It is almost an axiom of our law that a man who kills another in the necessary defense of himself from death or even serious bodily harm is excused, and must be acquitted when indicted." Beale, *Retreat From A Murderous Assault,* 16 H.L.Rev. 567 (1903). That has been the law at least since the early eighteenth century, and prior to that time defendants were convicted but then routinely pardoned. Beale, *supra,* at 567–71.

The crucial differences in the development of the justification of self-defense and the partial-

ly extenuating circumstances of extreme emotional disturbance render it critical for us to apply *Patterson* with care. While it is elementary and fundamental to our jurisprudence that killing or wounding in self-defense is simply no crime at all, the same cannot be said for a killing by one suffering from extreme emotional disturbance. An automatic application of *Patterson* to a case concerning self-defense may constitute precisely the type of relaxation of the prosecution's burden of proof that *In re Winship* held to be constitutionally impermissible.

reasonable doubt that the killing had been felonious (and therefore unlawful) and with malice. Confusion in the minds of the jury was inescapable with a charge that was unequivocally contradictory. This Court has equated unlawfulness with "the absence of self-defense." *Wynn v. Mahoney, supra,* at 451. And this Court has also stated that "[s]elf-defense is wholly inconsistent with malice." *Guthrie v. Warden, Maryland Penitentiary,* 683 F.2d 820, 824 n. 5 (4th Cir.1982).[3]

In the face of such conflicting instructions, the jury's compliance with one part of the instructions necessarily led to its disregard of another part. If the jury truly demanded that the prosecution prove "unlawfulness" and "malice" beyond a reasonable doubt it would be ignoring the judge's instructions to require the defendant to prove self-defense. If the jury demanded that the defendant prove self-defense by a preponderance of the evidence it would be ignoring the judge's instructions that the prosecution prove "unlawfulness" and "malice" beyond a reasonable doubt.[4]

The confusion is highlighted by the realization that the jury might have been left

---

**3.** The Court in *Guthrie* continued: "Hence, the state must disprove self-defense [when the evidence raises the issue] to establish the element of malice beyond a reasonable doubt as required by *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)." 683 F.2d at 824 n. 5.

**4.** We are unwilling to accept a distinction, pressed by the state and the district court, between unlawfulness as an element of the crime and unlawfulness as a descriptive legal conclusion. Since to be a crime an act must be unlawful, we are unpersuaded that much weight should be given to the presence or absence of the word "unlawful" in the statutory definition of the crime. We recognize that in its effort to distinguish *Frazier v. Weatherholtz,* 572 F.2d 994 (4th Cir.1978), the *Wynn* court did observe that Virginia, unlike North Carolina, gave no indication that it regarded unlawfulness as an element of murder. However, we give more weight to the first distinction noted by the *Wynn* court, that "the Supreme Court of Virginia had held that the rule shifted only the burden of production, not the burden of persuasion, to the defendant." *Wynn v. Mahoney, supra,* 451 n. 4. In the instant case, the burden of production having undisputably been met by the testimony of the defendant and her corroborating witness, defendant is objecting solely to the shifting of the burden of persuasion.

For these reasons, *Baker v. Muncy,* 619 F.2d 327 (4th Cir.1980), is not inconsistent with the result achieved here. The *Baker* court merely cited *Frazier v. Weatherholtz* with approval for the proposition that the state may in certain instances "cast upon the accused the burden of proving self defense." 619 F.2d at 327. The court did not, however, discuss *Frazier v. Weatherholtz* in the context of the burden of persuasion.

*Thomas v. Arn,* 704 F.2d 865 (6th Cir.1983), is similarly distinguishable since Ohio placed only the burden of going forward (burden of production) on the accused. 704 F.2d at 870, quoting the statute in effect at the time of the crime, Ohio Rev.Code § 2901.05(A).

*See also* n. 3 *supra,* quoting *Guthrie, supra,* 683 F.2d at 824 n. 5. The *Guthrie* court stated that the state must disprove self-defense "(where the evidence raises the issue)," which we read to mean that the burden of production, but not the burden of persuasion, may be placed on the accused. In the instant case, there is no dispute that defendant has carried her burden of production. Thomas testified that she shot Hunter after she had retreated and after she saw Hunter reach for what she believed to be a gun. Her version of the facts was corroborated by an eyewitness.

Finally, in this context, we find illuminating the Model Penal Code's discussion of the burden of persuasion regarding self-defense, which appears in Article III, entitled General Principles of Justification. MODEL PENAL CODE, § 3.01, comment 1 (Tentative Draft No. 8 1958):

1. Paragraph (1) provides that any claim of justification under the Article constitutes an affirmative defense. The procedural consequence of this declaration is stated in Section 1.13(2), Tentative Draft No. 4, p. 7. The prosecution has no evidential burden unless and until there is evidence supporting the defense. Given such evidence, however, the defense must be negatived beyond a reasonable doubt. It is possible, of course, to go further and impose a burden of persuasion on the defendant as to any of the defenses established by Sections 3.02–3.10. Some states now do so with respect to such justifications as self-defense and the issue should be faced as we proceed. We have previously said, however, that we do not favor such a shift in the persuasive burden in the absence of the most exceptional circumstances, involving as it does an inroad on the principle that guilt must be established beyond reasonable doubt. See Comments Section 1.13, Tentative Draft No. 4, p. 112. We do not think that circumstances so exceptional obtain with respect to any of the justifications recognized in Article 3.

with a reasonable doubt, but no more than a reasonable doubt, as to whether Thomas had acted in self-defense. In that instance, neither side would have carried its burden of proof under the trial court's instructions. The presence of a reasonable doubt would necessitate a conclusion that the prosecution had not proved its case beyond reasonable doubt. The presence of no more than a reasonable doubt would necessitate a conclusion that the defendant had not carried her burden of proving self-defense by a preponderance of the evidence.

Nor do we need to merely speculate as to the jury's possible confusion in the case. The jury returned a verdict of guilty of murder, but, all on its own, added a request for leniency, an option which the trial court had not presented to the jury. As Thomas' trial counsel observed, the inconsistency "obviously indicates that there was a compromise of some sort within the jury."

The district court apparently resolved this conflict by concluding that where the proof of self-defense led to a reasonable doubt, but no more than a reasonable doubt, the jury could return a verdict of manslaughter. His opinion therefore states in part:

> In essence, the instructions required acquittal if the petitioner established all the elements of self-defense, but if during her proof of self-defense the jury had a reasonable doubt as to malice aforethought ... the jury could not convict her of murder, and the offense would be reduced to manslaughter.

The solution, however, is wholly unacceptable. It amounts to requiring a defendant to disprove malice in order to reduce her crime from murder to manslaughter. Where, as in South Carolina, a state has made murder and manslaughter separate crimes,[5] the district court's solution directly contradicts the Supreme Court's holding in *Mullaney*. As noted above, despite the advent of *Patterson*, *Mullaney* cannot be viewed as having been overruled, particularly in an instance

such as this in which the district court's solution transgresses the central tenet of that case.

We hold, therefore, that the instructions regarding the burden of proof were so inherently contradictory and confusing as to rise to the level of a constitutional infirmity under the principles of *Winship, Mullaney, Guthrie,* and *Wynn* discussed above. *Weatherholtz* and *Baker*, properly viewed, compel no opposite conclusion because *Weatherholtz* dealt only with burden of production and *Baker* merely cited *Weatherholtz* with approval. Here we concern ourselves with a faulty allocation of the burden of persuasion. Accordingly, we reverse the judgment of the district court and remand the case with directions to issue the writ unless Thomas is retried within such reasonable period as the district court may prescribe.

REVERSED AND REMANDED.

K.K. HALL, Circuit Judge, dissenting:

I cannot agree with the majority's conclusion that the trial court's jury instructions were constitutionally inadequate. Thomas's contention that the trial judge erred by placing upon her the burden of proving self-defense belies both Fourth Circuit and Supreme Court precedent. Nor do I agree that the jury was confused by the instructions. I therefore dissent.

The trial judge instructed the jury that it could return a verdict of murder, manslaughter, or not guilty. He distinguished the crimes of murder and manslaughter and described their respective elements in accord with South Carolina law. The judge repeatedly informed the jury that the State had the burden of proving beyond a reasonable doubt all of the elements of the murder charge. He also instructed the jury that Thomas had the burden of proving by a preponderance of the evidence that she acted in self-defense.

The gravamen of Thomas's complaint is that South Carolina law, which allocates to

---

**5.** Murder is defined in S.C.Code § 16–3–10 (1976). Manslaughter is defined in S.C.Code § 16–3–50 (1976).

the defendant the burden of proving self-defense by a preponderance of the evidence, violates the principles of due process. In my mind, this argument is clearly meritless.

The Supreme Court has recognized that a state may require a defendant to prove an affirmative defense. In *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the Supreme Court rejected a defendant's due process challenge to a New York statute requiring him to prove by a preponderance of the evidence the affirmative defense of acting under the influence of extreme emotional distress. In upholding the statute, the Court observed that at common law the burden of proving all "affirmative defenses—indeed, 'all . . . circumstances of justification, excuse or alleviation'—rested on the defendant." *Id.* at 203, 97 S.Ct. at 2323 (quoting 4 W. Blackstone, *Commentaries* 201). The Court concluded that "once the facts constituting a crime are established beyond a reasonable doubt . . . the State may refuse to sustain the affirmative defense . . . unless demonstrated by a preponderance of the evidence." *Id.* at 207, 97 S.Ct. at 2325.

This Court has applied *Patterson* in several cases involving laws which place the burden of proving self-defense upon the defendant. In *Frazier v. Weatherholtz,* 572 F.2d 994 (4th Cir.1978), we determined that because the State of Virginia considered self-defense an affirmative defense, it was not unconstitutional to require the defendant to bear the burden of proof. Although the *Frazier* Court addressed a Virginia statute, its holding is equally applicable in South Carolina, because the decision is based on the Federal—not the Virginia—Constitution. The Court cited *Patterson* for the proposition that due process was satisfied "when the state proved beyond a reasonable doubt 'every fact necessary to constitute the crime with which [the defendant was] charged.' " *Id.* at 996 (quoting *Patterson,* 432 U.S. at 206, 97 S.Ct. at 2324).

A few months later, in the unpublished opinion of *Maxey v. Martin,* 577 F.2d 735 (4th Cir.1978), this Court relied on *Patterson* and *Frazier* to uphold a South Carolina jury instruction which placed upon the State the full burden of proof for murder and placed upon the defendant the burden of establishing self-defense by a preponderance of the evidence. *Frazier* and *Patterson* were relied on again in *Baker v. Muncy,* 619 F.2d 327 (4th Cir.1980), where this Court held that it was not unconstitutional for Virginia to "cast upon the accused the burden of proving self-defense."[1] *Id.* at 331. As in *Frazier* and *Maxey,* the *Baker* Court stressed that the State was not relieved of its obligation to prove all of the essential elements of murder.

Most recently, in *Cooper v. State of North Carolina,* 702 F.2d 481 (4th Cir.1983), a Fourth Circuit panel, which included one of the majority members in the instant case, upheld a jury instruction which placed upon the defendant the burden of proving insanity. On appeal, the defendant argued that by failing to instruct the jury to consider evidence about his mental illness with regard to each specific element of the alleged crime, the court effectively forced him to prove the absence of those elements. This Court held that because an instruction on the State's overall burden of proof was given along with the general instruction on mental illness the jury charge was not constitutionally infirm.

These cases clearly establish that South Carolina's rule requiring a defendant to prove self-defense does not violate the defendant's constitutional rights. In the instant case, the trial judge properly instruct-

---

1. The Court's full statement reads: "[w]e agree that self defense is an affirmative defense under Virginia law and the State may, under principles set forth in *Patterson v. New York,* cast upon the accused the burden of proving self defense." 619 F.2d at 331 (citation omitted). I can find nothing in this language to support the majority's conclusion that the *Baker* court was referring to the burden of production rather than the burden of persuasion. Pursuant to *Patterson,* a New York court "may refuse to sustain the affirmative defense of insanity *unless demonstrated by a preponderance of the evidence.*" 432 U.S. at 207, 97 S.Ct. at 2325 (emphasis added). Thus, the statement that "under the principles set forth in *Patterson*" a state may "cast upon the accused the burden of proving self defense" can only be read to mean that the state may place upon the defendant the burden of persuasion.

ed the jury. The instructions distinguished the elements of the crime on which the State had the burden of proof from the elements of the affirmative defense on which Thomas had the burden of proof. In addition, the jury was repeatedly reminded that the State carried the burden of proof on each element of the crime. The due process clause does not require more.

Nor do I agree with the majority's conclusion that because the jury found Thomas guilty of murder, but added a request for leniency, it was confused by the jury instruction. In my mind, the recommendation for leniency could just as likely have been based upon the jury's belief that the victim deserved his fate, and that, consequently, some mercy should be accorded the defendant.

By returning a verdict of murder, the jury indicated that the State had sustained its burden of proof beyond a reasonable doubt. In so doing, the jury necessarily rejected Thomas's claim of self-defense. Second-guessing the jury's decision-making process is a dangerous game, as judicial action based on such guesswork intrudes upon the domain of the jury.

Accordingly, I would uphold the conviction.