Ronald Francis **SMART,** Petitioner,

v.

**William D. LEEKE, and The Attorney General of South Carolina, Respondents.**

**Civ. A. No. 3:85–0225–15B.**

United States District Court, D. South Carolina, Columbia Division.

Sept. 30, 1987.

---

David I. Bruck, Bruck & Blume, Columbia, S.C., for petitioner.

Donald J. Zelenka, Columbia, S.C., for respondents.

HAMILTON, District Judge.

Petitioner, a state prisoner confined by the South Carolina Department of Corrections, has filed the present action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.[1] Petitioner complains that the trial court's instructions to the jury[2] on the issue of self-defense violated the Fourteenth Amendment by impermissibly shifting to him the burden of disproving the element of malice, thereby relieving the State of its constitutional duty to prove each element of the crime of murder beyond a reasonable doubt. He also complains that the jury instructions violated the Due Process Clause of the Fourteenth Amendment because they were contradictory and confusing. *See Thomas v. Leeke,* 725 F.2d 246 (4th Cir.), *cert. denied,* 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984). Finally, he asserts that the instruction to the jury offering various definitions of reasonable doubt violated the Due Process Clause of the Fourteenth Amendment by impermissibly lessening the State's burden to prove guilt beyond a reasonable doubt. Alternatively, he argues that the reasonable doubt instruction violated the Eighth Amendment requirement of special reliability in the process by which guilt or punishment is determined in a capital case. The matter is currently before the court upon the cross-motions of petitioner and respondents for summary judgment pursuant to Rule 56, Fed.R.Civ.Proc.

In accordance with 28 U.S.C. § 636(b)(1)(B) and this court's order of May 9, 1977 (Local Rule 19.02(b)(2)(C), D.S.C.), outlining the duties and responsibilities of United States Magistrates, the matter was referred to Magistrate Henry M. Herlong, Jr., for a report and recommendation. That report and recommendation, as filed March 23, 1987, is before the court at this time. In his report, Magistrate Herlong recommended that respondents' motion for summary judgment be granted and that petitioner's motion be denied. Petitioner

---

1. Petitioner is represented in this matter by David I. Bruck, Esquire, of the South Carolina Bar.

2. The entire set of jury instructions that was designated as Appendix A was omitted from publication at the Court's request.

filed objections to the magistrate's report and recommendation on April 1, 1987. Pursuant to 28 U.S.C. § 636(b)(1)(C) the court must make a *de novo* determination of those portions of the magistrate's report and recommendation to which the petitioner has objected. *Camby v. Davis,* 718 F.2d 198 (4th Cir.1983). After reviewing the record in this case, the magistrate's report and recommendation, the petitioner's objections thereto and the applicable law, the court concludes that the objections of petitioner are meritorious. Therefore, for the reasons which follow, the court cannot accept the magistrate's recommendation that respondents' motion for summary judgment should be granted.

Petitioner was arrested on August 9, 1978, and was thereafter indicted on four counts of murder. Following the appeal of certain pretrial orders the case came to trial in February of 1981. Petitioner asserted the defense of self-defense and was acquitted of two of the murder charges and convicted of the other two. He was initially sentenced to death. The death sentence was vacated and the conviction was affirmed in *State v. Smart,* 278 S.C. 515, 299 S.E.2d 686 (1982). Subsequently, petitioner was sentenced to two consecutive terms of life imprisonment.[3]

### SELF–DEFENSE INSTRUCTIONS

Petitioner contends that the trial judge's instructions charging the jury that petitioner had to prove self-defense by a preponderance of the evidence unconstitutionally relieved the State of its burden to prove beyond a reasonable doubt all of the elements of the crime charged. *Martin v. Ohio,* —— U.S. ——, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987); *Patterson v. New*

*York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

South Carolina law defines murder as "the killing of any person with malice aforethought, either express or implied." S.C.Code Ann. § 16–3–10 (Law.Co-op.1976). Malice, under South Carolina law, is defined as the intentional doing of a wrongful act, without just cause or excuse. *State v. Foster,* 66 S.C. 469, 45 S.E. 1 (1903). Alternative definitions of malice under South Carolina law are, "malice is a legal term implying wickedness and excluding a just cause or excuse," *State v. Fuller,* 229 S.C. 439, 93 S.E.2d 463, 466 (1956) and:

> [Malice] 'is a wicked condition of the heart. It is a wicked purpose. It is a performed purpose to do a wrongful act, without sufficient legal provocation; and ... it would be an indication to do a wrongful act which resulted in the death of this man, without sufficient legal provocation, or just excuse, *or legal excuse.*'

*State v. Judge,* 208 S.C. 497, 38 S.E.2d 715, 719 (1946) (emphasis added), *quoting, State v. Heyward,* 197 S.C. 371, 15 S.E.2d 669 (1941) *quoting with approval, State v. Gallman,* 79 S.C. 229, 60 S.E. 682 (1908).

Consequently, to establish the crime of murder under South Carolina law, the state must prove two elements: (1) a killing, and (2) the killing was caused by the intentional and wrongful act of the accused without legal justification or legal excuse.[4] Petitioner states that: "It can readily be seen from these basic features of South Carolina law that where a defendant pleads self-defense to a charge of murder, he is in reality

---

**3.** The lengthy procedural history of this present petition will not be repeated in this order; rather, the court specifically adopts and incorporates by reference the procedural history delineated on pages one through three of the magistrate's report.

**4.** Under the law of South Carolina, self-defense constitutes a "legal excuse" for the killing of another. *State v. Martin,* 216 S.C. 129, 57 S.E. 2d 55, 57 (1949). The Fourth Circuit has also held that when a state's definition of murder

includes the element of malice, the state must disprove self-defense in meeting its burden of proof for establishing the crime of murder. "Self-defense is wholly inconsistent with malice, which is an element of murder in Maryland. Hence, the state must disprove self-defense (where the evidence raises the issue) to establish the element of malice beyond a reasonable doubt as required by *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.E.2d 368 (1970)." *Guthrie v. Warden,* 683 F.2d 820 n. 5 (4th Cir.1982).

simply denying one of the facts necessary to establish the offense—namely, that he acted without legal excuse when he killed the deceased. For this reason, petitioner submits that the jury instructions in his case which required him to prove by a preponderance of the evidence that he acted in self-defense had the inescapable result of relieving the prosecution of the burden of proving every element of the offense of murder, as that crime is defined under the law of South Carolina." Petitioner's Petition for Writ of Certiorari to the Supreme Court of South Carolina, pp. 8–9 (Incorporated by reference in the present habeas corpus petition). Respondents submit that the self-defense instruction in this case "was not burden-shifting in violation of *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) nor confusing [in violation of *Thomas, supra* ]." Respondents' Amended Motion for Summary Judgment, p. 6. They direct the court's attention to the fact that the trial court informed the jury "that they had to find that the State had proved every element of murder, including malice beyond a reasonable doubt. (Tr. p. 2009)." They also call the court's attention to the trial court's jury instruction that: " 'The defendant is entitled to any reasonable doubt arising in the whole case or in *any* defenses.' (Tr. 2009, 11. 20–21)." *Id.* (emphasis added by respondents). Respondents also note that South Carolina has consistently held that self-defense is an affirmative defense to the crimes of murder and manslaughter. *State v. Glover*, 284 S.C. 152, 326 S.E.2d 150 (1985).[5] The South Carolina Supreme Court has also held that placing the burden of self-defense upon the defendant does not violate due process. *State v. Bolton*, 266 S.C. 444, 223 S.E.2d 863 (1976); *State v. Linder*, 276 S.C. 304, 278 S.E.2d 335 (1981).

The magistrate reviewed the parties' contentions and determined that the recent case of *Martin v. Ohio, supra,* resolved the argument concerning the burden of proof. *Martin* held that the Ohio procedure requiring defendants to prove self-defense by a preponderance of the evidence did not violate due process. Under the applicable Ohio law, aggravated murder was defined as, " 'purposely and without prior calculation and design caus[ing] the death of another.' " *Martin*, 107 S.Ct. at 1100 (citation omitted). In upholding the Ohio practice the Court rejected the petitioner's contention that the elements of aggravated murder and self-defense impermissibly overlap and run afoul of *In Re Winship, supra,* and *Patterson, supra.* The Court stated Ohio "did not exceed its authority in defining the crime of murder as purposely causing the death of another with prior calculation or design," nor did it seek to shift to the defendant the burden of proving any of the elements of the crime. *Martin*, 107 S.Ct. at 1102. Additionally, the Court noted that the jury instructions were "adequate to convey to the jury that all of the evidence, including evidence going to self-defense, must be considered in deciding whether there was a reasonable doubt about the sufficiency of the state's proof of the elements of the crime." *Id.* The Court summarized by stating:

We are thus not moved by assertions that the elements of aggravated murder and self-defense overlap in the sense that evidence to prove the latter will often tend to negate the former. It may be that most encounters in which self-defense is claimed arise suddenly and involve no prior plan or specific purpose to take life. In those cases, evidence offered to support the defense may negate a purposeful killing by prior calculation and design, but Ohio does not shift to the defendant the burden of disproving any element of the state's case. When the prosecution has made out a *prima facie* case and survives a motion to acquit, the jury may nevertheless not convict if the evidence offered by the defendant raises

---

5. Self-defense is no longer an affirmative defense under the law of South Carolina. *State v. Bellamy*, 293 S.C. 103, 359 S.E.2d 63 (1987). Apparently, self-defense was no longer an affirmative defense under South Carolina law as a result of the ruling in *State v. Davis*, 282 S.C. 45, 317 S.E.2d 452 (1984). *See State v. Bellamy*, 359 S.E.2d at 65 n. 1. The ruling in *Davis* was held to be applicable "in all cases tried subsequent to the date of that decision, so long as a contemporaneous objection was made at trial." *State v. Glover*, 326 S.E.2d at 151.

any reasonable doubt about the existence of any fact necessary for the finding of guilt. Evidence creating a reasonable doubt could easily fall far short of proving self-defense by a preponderance of the evidence. Of course, if such doubt is not raised in the jury's mind and each juror is convinced that the defendant purposely and with prior calculation and design took life, the killing will still be excused if the elements of the defense are satisfactorily established. We note here, but need not rely on it, the observation of the Supreme Court of Ohio that 'Appellant did not dispute the existence of [the elements of aggravated murder], but rather sought to justify her actions on grounds she acted in self-defense.' 21 Ohio St.3d, at 94, 488 N.E.2d, at 168.[**]

Petitioner submits that there can be no conviction under Ohio law unless the defendant's conduct is unlawful and that because self-defense renders lawful what would otherwise be a crime, unlawfulness is an element of the offense that the state must prove by disproving self-defense. This argument founders on state law, for it has been rejected by the Ohio Supreme Court and by the Court of Appeals for the Sixth Circuit. *White v. Arn,* 788 F.2d 338, 346–347 (CA6 1986); *State v. Morris,* 8 Ohio App.3d 12, 18–19, 455 N.E.2d 1352, 1359–1360 (1982). It is true that unlawfulness is essential for conviction, but the Ohio courts hold that the unlawfulness in cases like this is the conduct satisfying the elements of aggravated murder—an interpretation of state law that we are not in a position to dispute. The same is true of the claim that it is necessary to prove a 'criminal' intent to convict for serious crimes, which cannot occur if self-defense is shown: the necessary mental state for aggravated murder under Ohio law is the specific purpose to take life pursuant to prior calculation and design. See *White v. Arn, supra,* at 346.

[**] The dissent believes that the self-defense instruction might have led the jury to believe that the defendant had the burden of proving prior calculation and design. Indeed, its position is that *no* instruction could be clear

enough not to mislead the jury. As is evidence from the test, we disagree. We do not harbor the dissent's mistrust of the jury; and the instructions were sufficiently clear to convey to the jury that the state's burden of proving prior calculation did not shift and that self-defense evidence had to be considered in determining whether the state's burden had been discharged. We do not depart from *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed. 2d 281, 53 L.Ed.2d 281 (1977), in this respect, or in any other.

*Id.* at 1102–1103 (emphasis in original).

The magistrate applied *Martin* to the facts in this case and concluded that: "In light of this recent unequivocal decision by the Supreme Court, petitioner's argument concerning the burden of proof on self-defense is without merit." Magistrate's Report and Recommendation, p. 5. The magistrate reached this conclusion by first determining the similarities between the Ohio definition of aggravated murder and South Carolina's definition of murder. He noted that the definitions are substantially similar with the exception that South Carolina, "Through its malice definition ... adds the clause 'wrongful act without just cause or excuse.'" Magistrate's Report and Recommendation, p. 4. The magistrate then equated this element with unlawfulness, as that term had been discussed in *Martin,* and citing *Martin,* —— U.S. at ——, 107 S.Ct. at 1103, and concluded that the petitioner's argument concerning the burden of proof was without merit.

Petitioner objected to the magistrate's findings and argued that *Martin* is distinguishable from this case and that *Thomas v. Leeke,* is "unaffected by *Martin v. Ohio* and cannot be distinguished." Petitioner's Objections, pp. 2–4. He also objected to the magistrate's recommendation concerning his reasonable doubt argument. Petitioner stated, "With all respect, ... [the magistrate's review of the reasonable doubt issue] falls short of the review mandated by 28 U.S.C. Sec. 2254." *Id.* at 5.

While the court agrees with the magistrate's methodology for analyzing petitioner's claim regarding the self-defense instructions, it cannot agree with the result.

*Patterson v. New York, supra,* delineates a two-step analysis for determining the constitutionality of an affirmative de-

fense. *Patterson*, 97 S.Ct. at 2324–2325. The first step is to determine the elements of the crime at issue, in this case murder. *Id.* at 2324. The second step is to determine if the affirmative defense, here self-defense, "serve[s] to negative any facts of the crime which the state is to prove in order to convict of murder." *Id.* at 2325. This was the analysis applied in *Martin v. Ohio, supra.* In *Patterson*, the Court upheld the constitutionality of New York's procedure whereby the defendant was required to prove, by the preponderance of the evidence, that he acted under an extreme emotional disturbance in order to reduce murder to manslaughter. Under New York law the crime of murder contained two elements: "(1) 'intent to cause the death of another person' and (2) 'caus[ing] the death of such person or a third person.' N.Y.Penal Law § 125.25 (McKinney 1975)." *Patterson*, 97 S.Ct. at 2321 (footnote omitted). The Court noted that malice aforethought was *not* an element of the crime. After further discussions of the burden of proof and the elements of murder under New York law, the court stated: "It is plain enough that if the intentional killing is shown, the state intends to deal with the defendant as a murderer unless he demonstrates the mitigating circumstances [of extreme emotional disturbance]." *Id.* at 2325. The Court then went on to discuss the affirmative defense of extreme emotional disturbance and stated that the defense "does not serve to negative any facts of the crime which the State is to prove in order to convict of murder." *Id.* at 2325. The Court upheld the New York law refusing to "adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of the accused." *Id.* at 2327.

Applying the same analysis in *Martin v. Ohio*, the Court, deferring to the Ohio defi-nition of aggravated murder, compared the elements of the crime to the definition of the affirmative defense of self-defense and found no violation of the principles of *Patterson, Mullaney*, or *Winship. Martin v. Ohio*, —— U.S. ——, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987). The Court specifically rejected the petitioner's claim that unlawfulness was an element of aggravated murder under Ohio Law. The Court stated that:

It is true that unlawfulness is essential for conviction, but the Ohio courts hold that the unlawfulness in cases like this is the conduct satisfying the elements of aggravated murder—an interpretation of state law that we are not in a position to dispute. The same is true of the claim that it is necessary to prove a 'criminal' intent to convict for serious crimes, which cannot occur if self-defense is shown: the necessary mental state for aggravated murder under Ohio law is the specific purpose to take life pursuant to prior calculation and design. See *White v. Arn, supra*, at 346.

*Martin*, 107 S.Ct. at 1103.

In effect, under Ohio law, once the prosecution has proven beyond a reasonable doubt all of the elements of aggravated murder, a presumption of unlawfulness arises, i.e. conduct has occurred which the state has defined as criminal and has subjected to certain sanctions. *Id.; White v. Arn*, 788 F.2d 338, 345–347 (6th Cir.1986); *Ohio v. Martin*, 21 Ohio St.3d 91, 488 N.E.2d 166, 168–169 (1986), *aff'd*, —— U.S. ——, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987); *State v. Morris*, 8 Ohio App.3d 12, 455 N.E.2d 1352, 1359 (1982) ("Once the prosecution has proven each element of ... [the crime], the prosecution has proven the unlawfulness of the defendant's act."). The defendant may then prove, by a preponderance of the evidence that he acted in self-defense [6] and thereby justify his conduct, i.e., remove it from the realm of unlawful conduct and avoid sanctions.[7] *Id.* There-

---

6. Under Ohio law, self-defense is "characterized ... as a 'justification for admitted conduct.'" *Ohio v. Martin*, 21 Ohio St.3d at 94, 488 N.E.2d at 168, *quoting, State v. Poole*, 33 Ohio St.2d 18, 19, 294 N.E.2d 888 (1973).

7. As the Supreme Court of Ohio stated in *Ohio v. Martin, supra:*

Self-defense represents more than a 'denial or contradiction of evidence which the prosecution has offered as proof of an essential ele-

fore, under Ohio law the defendant is not required to "negative any facts of the crime which the state is required to prove in order to convict of murder." *Patterson,* 97 S.Ct. at 2325.

■ In recommending that summary judgment be granted in favor of the respondents, the magistrate determined that unlawfulness under Ohio law equated to a "wrongful act without just cause or excuse"[8] under South Carolina law. Magistrate's Report and Recommendation, p. 4–5. However, if this conclusion was accurate, the Supreme Court in *Martin v. Ohio* could not have found it was possible for the jury to conclude that all of the elements of aggravated murder had been proved beyond a reasonable doubt and yet still excuse the killing "if the elements of ... [self-]defense ... [were] satisfactorily established." *Martin,* 107 S.Ct. at 1102. This result is possible only because under Ohio law unlawfulness is not an element of the crime of aggravated murder. *Id.* at 1103. However, under South Carolina law malice i.e., a wrongful act without just cause or excuse, is an element of the crime of murder.[9] S.C.Code Ann. § 16–3–10 (Law.Co-op.1976). Additionally, as has been previously stated, under South Carolina law a killing in self-defense constitutes legal justification. *State v. Martin, supra.*

■ Consequently, under South Carolina law it is impossible for a jury to find that the state has proven beyond a reasonable doubt each element of the crime and still acquit the defendant by finding he acted in self-defense. If the state proves beyond a reasonable doubt that the defendant killed a person with malice, i.e., by a wrongful act without just cause or excuse, self-defense cannot be proven by a preponderance of the evidence. The inverse is also true under South Carolina law. Therefore, placing the burden on the defendant in a murder case to prove that he acted in self-defense invariably places the burden on the defendant to prove his innocence and to disprove that he acted with malice,[10] an essential element of the crime of murder. In essence, this procedure,[11] requiring the de-

ment of the crime charged. Rather, we stated in *Poole,* this defense admits the facts claimed by the prosecution and then relies on independent facts or circumstances which the defendant claims exempt him from liability. Thus, the burden of proving self-defense by a preponderance of the evidence does not require the defendant to prove his innocence by disproving an element of the offense with which he is charged. The elements of the crime and the existence of self-defense are separate issues. *Self-defense seeks to relieve the defendant from culpability rather than to negate an element of the offense charged.*
*Ohio v. Martin,* 21 Ohio St.3d at 94, 488 N.E.2d at 168, *aff'd,* — U.S. —, 107 S.Ct. 1098 (1987) (citations omitted) (emphasis added).

8. This exact phrase was used in defining malice in the present case. Tr., p. 2011, ll. 11–12.

9. Any argument that the phrase "without just cause or excuse" is merely "a descriptive legal conclusion" as opposed to an essential component of malice, an element or murder, is foreclosed by *State v. Howell,* 162 S.C. 394, 160 S.E. 742 (1931). *See, Thomas v. Leeke,* 725 F.2d 246 n. 4 (4th Cir.), *cert. denied,* 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984). In *Howell,* the defendant was convicted of murder. The trial judge in that case defined malice as follows: " 'Malice is a term of art, Gentlemen, used in the law books. It is defined about this way. It is

any form or design of doing mischief which arises from hatred or revenge. But the legal definition of malice is: 'Malice is the wilful intentional doing of a wrongful act, knowing it to be wrong.' Wilful, intentional and when a person does an act knowing it to be wrong, he intends to do it, it is malicious.' " *Howell,* 162 S.C. at 396, 160 S.E. at 742. The South Carolina Supreme Court reversed the conviction stating: "It is patent that the very heart of the definition of malice is eliminated from the definition in this case. The very essence of malice is that the wrongful act must have been done intentionally *and without just cause or excuse." Id.* (emphasis in original). *See also, State v. Cain,* 184 S.C. 388, 192 S.E. 399 (1937); *State v. Williams,* 166 S.C. 63, 164 S.E. 415, 424–425 (1932).

10. As has been stated *supra,* at 416, the South Carolina definition of murder included malice. Malice has been defined as "a formed purpose and design to do a wrongful act under the circumstances that exclude *any legal right to do it." State v. Fuller,* 229 S.C. 439, 93 S.E.2d 463, 466 (1956) (emphasis added).

11. In petitioner's case the jury was instructed that the state had the burden of proof beyond a reasonable doubt of each of the elements of murder. Tr. at 2007–2013. Those elements were a killing or killings and malice aforethought. Tr. at 2011. They were also instruct-

fendant to prove self-defense by a preponderance of the evidence requires the defendant to "negative ... facts of the crime [malice] which the state is required to prove in order to convict [the defendant] of murder." *Patterson*, 97 S.Ct. at 2325. Consequently, it runs afoul of the principles of *Martin v. Ohio, Patterson v. New York, Mullaney v. Wilbur*, and *In Re Winship*, which require the state to bear the burden of proof beyond a reasonable doubt on every element of the crime charged. As the Court noted in *Engle v. Isaac*, 456 U.S. 107, 120, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982), "Our opinions suggest that the prosecution's constitutional duty to negate affirmative defenses may depend, at least in part, on the manner in which the State defines the charged crime." While the states are given a significant degree of freedom in defining the elements of a crime, when a state chooses to encompass malice as an element of murder and chooses to define malice as a wrongful act without just cause or excuse, then it must bear the burden of proving that element beyond a reasonable doubt in order to establish the crime of murder. *See In Re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), *quoting, Davis v. United States*, 160 U.S. 469, 488, 16 S.Ct. 353, 358, 40 L.Ed. 499 (1895) (In order for the prosecution to obtain a conviction the State must prove "beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged."). The state, once it has chosen to define malice as a wrongful act without just cause or excuse, is not free to place the burden on the defendant to prove he acted with just cause or excuse. *Martin v. Ohio, supra; Patterson v. New York, supra; Mullaney v. Wilbur, supra; In Re Winship, supra.*

ed that malice was a term of art which imported "wickedness and hatred and a determination to do what one knows to be wrong, without just cause or excuse or legal provocation." Tr. at 2011, ll. 7–10. Self-defense was instructed at Tr. at 2016–2019, wherein the jury was instructed that the defendant bore the burden of proof by a preponderance of the evidence on this matter. Due to the manner in which South Carolina has defined murder, this procedure

## HARMLESS ERROR CONSIDERATION

■ It therefore appears that, based on the foregoing analysis, the writ of habeas corpus must be issued. *See Wynn v. Mahoney*, 600 F.2d 448, 450 (4th Cir.1979), *cert. denied*, 444 U.S. 950, 100 S.Ct. 423, 62 L.Ed.2d 320 (1979) ("Because proof of self-defense constitutes an absolute defense in that it renders the homicide justifiable, any error in the trial court's instruction concerning self-defense was necessarily prejudicial."). However, subsequent to *Wynn v. Mahoney*, the Supreme Court issued *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), which held that the harmless error standard of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) was applicable to jury instructions that violate the principles of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). Because of the substantial similarities between a *Sandstrom* and *Franklin* error and the constitutional errors in this case, the court finds *Rose v. Clark* analysis applicable to the error(s) in this case.[12] Error is harmless under *Chapman* if beyond a reasonable doubt it did not contribute to the verdict obtained. *Chapman, supra*, 368 U.S. at 24, 87 S.Ct. at 828. Alternatively, the Court in *Rose v. Clark*, stated, "[w]here a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed." *Rose v. Clark*, 478 U.S. at ——, 106 S.Ct. at 3107.

In this case, the petitioner was indicted on four counts of murder. The state's case was, for the most part, built upon circumstantial evidence. The jury found the peti-

violated due process. *Martin v. Ohio, supra; Patterson v. New York, supra; Mullaney v. Wilbur, supra;* and *In Re Winship, supra.*

12. *Sandstrom, Franklin*, and the errors in this case are all premised to a marked degree on underlying *Winship* violations. Additionally, these type errors "did not affect the composition of the record." *Rose v. Clark*, 478 U.S. at ——, 106 S.Ct. at 3107 n. 7.

tioner not guilty of the murders of two women, Jannes Harmon and Dorris Derrick, but guilty of the murders of Leldon Myers and Hardy Baxley. All four of the victims were killed at a residence in West Columbia, South Carolina on August 9, 1979. All four victims died from gunshot wounds from either a .25 caliber or a .38 caliber pistol.[13] The state's case consisted primarily of scientific evidence which delineated in detail the cause of death and possible positions of the victims at the time of death. Three of the victims had "A" type blood, Harmon, Myers and Derrick. The other victim and the defendant had "O" type blood. Both "O" and "A" type blood were found on the defendant when he was arrested. Additionally, the petitioner tried to flee from the police at the scene of the crime and also escaped for a short period during the course of his trial. Shortly after his arrest the petitioner was interviewed by a Detective Treme who recorded his conversation. These tapes were played at the trial. Apparently, the petitioner was substantially under the influence of alcohol at the time the tapes were made. The taped conversations contain numerous statements from the petitioner ranging from an admission of killing all four victims to an admission of only killing the two men in self-defense. Upon review of this portion of the transcript, it appears the self-defense theme predominates the conversation. Tr. at 1749–1783. The state also put up evidence tending to show that none of the victims had fired a pistol on the day of the killings. Finally, the state noted that the petitioner stated to a prison guard during his escape that he had killed four people and one more would not make any difference. The petitioner did not take the stand in his own defense; however, he presented several witnesses. Among the evidence submitted which tended to show that the petitioner acted in self-defense, the court finds most persuasive the testimony of Dr. Wendell Sowell. Tr. at 1866–1884.

Dr. Sowell reviewed the reports of gunshot residue tests which were conducted on the victims. As to each victim, he testified that they had either fired or been holding a pistol when it was fired since the last time the victims washed their hands. As to Harmon, she had four times as much of the chemical barium, (one of the chemicals tested for in residue tests) as the SLED official who conducted the test firings of the .38 caliber pistol. He also characterized victim Baxley's concentration of residual chemicals as a "high concentration". Tr. at 1879, ll. 23.

The defense also pointed out that the pistols allegedly used in the killings were owned by Baxley and Myers. As the defense further noted, Baxley was no stranger to firearms violence, having previously been convicted of the murder of a policeman in Barnwell, South Carolina. As to the impetus of the alleged shoot-out, the defense asserted that Myers sexual relations with Harmon (a young teenager) were a cause of repulsion and aggravation to the defendant and this situation led to an argument among the parties. This alleged misconduct had been the source of an earlier investigation by the Department of Social Services but no charges were filed.

Admittedly, this evidence on the petitioner's theory of self-defense does not conclusively establish his claim. However, upon review of the record the court finds that a reasonable juror could find that the petitioner killed Myers and Baxley in self-defense. The due process violation as discussed *supra*, which occurred in the petitioner's trial, cannot be said to be harmless beyond a reasonable doubt, nor can the court state that the predominately circumstantial evidence in this case establish petitioner's guilt beyond a reasonable doubt. Therefore, for the reasons stated and based upon the cited authorities, the court is constrained to conclude that the petitioner's motion for summary judgment should be

---

**13.** Although victims Myers and Baxley also had numerous knife wounds, these were not attrib-

uted as a cause of death.

granted and that the writ of habeas corpus should issue.

## CONFLICTING AND CONFUSING INSTRUCTIONS

■ As a *separate* and *independent* ground, the writ should issue because the instructions in this case suffer from the same due process infirmities identified in *Thomas v. Leeke, supra.* The court has reviewed the history of challenges to like instructions and finds itself in agreement with Judge Houck's conclusion "that the ... [Fourth Circuit] has seemingly judged each challenged set of jury instructions separately to see if there is a savings clause of some sort to keep the instructions from being declared unconstitutional." *Griffin v. Martin,* No. 3:86–0838–2 (D.S.C. July 24, 1985) (order denying habeas corpus relief) p. 9–10, *reversed,* 785 F.2d 1172 (4th Cir.1986), *D.Ct. aff'd, panel opinions withdrawn,* 795 F.2d 22 (4th Cir.1986) (en banc), *cert. denied,* — U.S. —, 107 S.Ct. 1376, 94 L.Ed.2d 691 (1987). In considering the challenged instructions in this case, it is apparent that the trial court instructed the jury that the burden of proof was upon the state to prove malice, an element of murder, beyond a reasonable doubt.[14] However, if the jury chose to obey that instruction, they would need to ignore the judges further instructions that the defendant must prove self-defense, a legal justification for killing, by the preponderance of the evidence. See *Thomas v. Leeke,* 725 F.2d at 256–257; *State v. Martin,* 216 S.C. 129, 57 S.E.2d 55, 57 (1949). This is the very constitutional infirmity identified in *Thomas v. Leeke, supra.* These instructions were conflicting and confusing. Additionally, as Judge Murnaghan stated in *Thomas:*

> The confusion is highlighted by the realization that the jury might have been left with a reasonable doubt, but no more than a reasonable doubt, as to whether Thomas had acted in self-defense. In

that instance, neither side would have carried its burden of proof under the trial court's instructions. The presence of a reasonable doubt would necessitate a conclusion that the prosecution had not proved its case beyond reasonable doubt. The presence of no more than a reasonable doubt would necessitate a conclusion that the defendant had not carried her burden of proving self-defense by a preponderance of the evidence.

*Thomas,* 725 F.2d at 252.

It should also be noted that in the present case these challenged instructions likely caused the jurors actual confusion and the judge, upon written request from the jury, was required to provide a written copy of the murder, manslaughter and self-defense instructions to the jury. Despite these problems, the state would argue that a "savings clause" was given in the instructions, i.e., the jury was advised " 'the defendant is entitled to any reasonable doubt arising in the whole case or in any defenses.' " Respondent's Amended Motion for Summary Judgment, p. 6, *quoting,* Tr. at 2009, ll. 20–21. This argument is unpersuasive. The court notes that this phrase is considerably weaker than the clause which was found insufficient to cure the constitutional infirmities identified as a savings clause in *Thomas v. Leeke,* 725 F.2d at 248–249. Therefore, because the instructions in this case contain the same constitutional infirmities identified in *Thomas v. Leeke,* the writ of habeas corpus must issue.[15]

Based on the foregoing rationale, and relying on the cited authorities, petitioner's motion for summary judgment shall be granted and the writ of habeas corpus shall issue unless the state elects to retry the petitioner within seventy (70) days of the date on which any appeal from this order becomes final, or within seventy (70) days of the date on which the time for filing any appeal herefrom expires, whichever occurs

---

14. Further compounding the confusion in these instructions were the numerous and various definitions which the trial court gave regarding the term reasonable doubt. *See,* Tr. at 2009.

15. For the reasons stated *supra,* at pages 421 through 422 of this order, this error is not harmless. *Rose v. Clark, supra.*

**424**

last.[16]

16. Because of the court's resolution regarding the infirmities in the self-defense instruction, the court need not reach the petitioner's contentions regarding the reasonable doubt instruction.